## UNITED STATES *v*. MASSON (No. 1083).[1]

1. EVIDENCE OF A PARTY IN INTEREST.

   It is presumed a collector in a given instance is acting within the law, but this is not a conclusive presumption, and there is no rule of law that deprives a party in interest of his right to have his testimony weighed and considered in opposition to that presumption of correctness.

2. OVERCHARGE FOR DRAYAGE.

   The importer here was compelled to pay drayage charges on his merchandise (matches) of 18 cents per case. The proof goes to show the regular rate for the haul was 6 cents per case. The law is that the rate "shall not exceed in any case the regular rates for such objects at the port in question."

United States Court of Customs Appeals, May 31, 1913.

APPEAL from Board of United States General Appraisers, Abstract 30903 (T. D. 33055).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant (attorney, of counsel), for the United States.

*Comstock & Washburn* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Thirty-seven cases of matches were taken possession of by the collector at the port of Baltimore as unclaimed and, as required by law, were caused by him to be transported to the Government warehouse, there to be stored until claimed and entered or otherwise disposed of.

The appellee thereafter duly claimed and entered the merchandise and was thereupon compelled to pay a drayage charge of 18 cents per case for the transportation of each of the 37 cases to the Government warehouse. Protest was filed against the payment of this charge, it being claimed that under Revised Statutes 2965, which is hereinafter referred to, the charge was excessive.

At the hearing before the Board of General Appraisers the appellee testified that he was an importer of matches at Baltimore and had been so engaged for two or three years; that he had obtained the drayage of like matches during that time for practically the same

---

[1] Reported in T. D. 33534 (24 Treas. Dec., 1016).

distance that the Government transported these for 6 cents per case, and that he had received bids from various local concerns, among them the one under contract with the Government, as hereinafter set forth, to do this drayage at this price, although his work had been done by another company during all of the time.   He was asked this question, "What information or knowledge have you of the rates charged by other concerns in Baltimore?" and his answer was, "For a similar haul they would be glad to get 6 cents per case," and in another connection he said that draymen in Baltimore figured their charges according to the distance—the longer the haul the larger the price, the merchandise being the same in each case.

All this testimony came in without objection and is not contradicted by the evidence offered on the part of the Government.   Its witness, the public storekeeper at Baltimore, testified that the contract between the Government and the drayage company provided for a flat rate of 18 cents upon every package transported by the company for the Government at Baltimore, regardless of the distance and also regardless of the size or weight of the package.   This contract was made by authority of the Secretary of the Treasury under the provisions of section 25 of the act of June 22, 1874 (18 Stat., 186, 191), hereinafter more specifically referred to, and as directed in the Customs Regulations of 1908, article 833, which is based upon the last-named statute, and provides for the annual letting of drayage contracts to the lowest responsible bidder after not less than 30 days' notice.

The Board of General Appraisers found upon the evidence that 6 cents a package would be the commercial charge for transporting the packages in this case the distance they were transported by the Government and sustained the protest.

Upon argument here the Government contends, in substance, that this finding is not warranted by the evidence and should be reversed, as within the rule that obtains in such cases, that a finding of fact may be reversed here if upon an examination of the record it is found to be wholly unsupported by or contrary to the weight of evidence.

Various reasons are alleged to support this contention, among others that the unsupported testimony of appellee, a party litigant, and having a personal interest in the determination of the issue which he himself made, is not sufficient either to overcome the presumption of correctness of the collector's action or to support a finding as to what the regular rates in fact are.

As to this particular argument, it may be observed that while under the law it is presumed that the collector has acted correctly, this is not a conclusive presumption, but may be overcome by evidence possessing sufficient probative force to accomplish that result. We know of no rule of law in force here that deprives the testimony

of a party in interest of the requisite probative force to accomplish this purpose, *simply because he is a party in interest.*

As to this, as well as the other objections to this finding of fact, we think it may be said that the evidence of record fairly supports the finding.

But the Government further contends that because, under its flat-rate contract with the drayage company, it must pay 18 cents each for the transportation of the 37 cases involved here, it must be permitted to recoup itself for that charge by requiring the appellee to pay that sum. The right to do this depends upon the construction to be given to section 2965 of Revised Statutes, the material provisions of which we quote:

Unclaimed merchandise * * * may be stored in any public warehouse, * * * and all charges for storage, labor, and other expenses accruing on any such merchandise, not to exceed in any case the regular rates for such objects at the port in question, must be paid before delivery of the goods on due entry thereof by the claimant or owner. * * *

It is argued on behalf of the Government that under the provisions of section 25 of the act of June 22, 1874, which we quote:

That public cartage of merchandise in the custody of the Government shall be let after not less than thirty days' notice of such letting to the lowest responsible bidder giving sufficient security, and shall be subject to regulations approved by the Secretary of the Treasury—

that drayage contracts must be let to the lowest bidder; that long experience has demonstrated that it is best for the Government under all the circumstances to make a flat-rate contract; and, further, that no other contract is practicable. It is also said that if, for instance, the package were a large one and the distance long, it would be a benefit to importers circumstanced similarly to the importer here to pay the flat rate, assuming apparently that in no case the Government would or could charge more than it had paid for the transportation of the merchandise under its contract.

These various considerations, while attesting the assiduity of counsel, seem hardly to be of controlling influence here. The statute, as we have seen, provides that the charges in a given case *shall not exceed the regular rates therefor* at the port in question, and it has been found by the board here that the commercial rate is 6 cents for the same transportation for which the Government has assessed the importer 18 cents. We think the language of the statute implies the regular commercial or business rates obtaining for like work at the port where the charges are made and this evidently was the view which the Treasury Department at one time entertained.

In a ruling of the department under date of June 2, 1891 (T. D. 11250), the question of drayage charges at Springfield, Mass., was considered, and the customs officers at that port were therein advised that in the absence of any contract for public cartage there they would, in case the law gave them a right to make any cartage

charge, exact such as were not above "those usually prevailing at your port." While in this ruling no express reference is made to section 2965, Revised Statutes, yet the subject matter of the decision seems to have required that it must have been in the mind of the Assistant Secretary of the Treasury who made the ruling.

In G. A. 7163 (T. D. 31271), decided in 1911, the Board of General Appraisers had before it a claim made by the appellee here almost identical with the one now before us and which it sustained.

We think it is consonant with reason to say that the rates contemplated by section 2965 are the regular commercial or business rates charged for like work at the port where the services are rendered, and that no other construction thereof can obtain.

If it is for the best interests of the Government to let its cartage contracts upon the flat-rate basis, and the record in this case does not show whether such is or is not the fact, although it may be presumed, nevertheless, we see no practical or other objection to requiring the Government to charge the regular commercial or business rates prevailing at a given port for the same services. It would seem that if in a particular case this flat rate was lower than such regular rates the Government would be justified in requiring importers to pay the regular rates; but however this may be, if such flat rate is higher than the regular rates we think the importer can not be required, in view of the statute, to pay a rate that is so much in excess of the regular rates as was charged here.

The Government is always represented by its proper officers at ports of entry where these questions arise, so has the means to ascertain what the regular rates are, and should in a reasonable way conform thereto.

There is no showing that it is impossible or impracticable for the Government to make drayage contracts equally as advantageous to it as a flat-rate contract, containing some reasonable provisions as to classification of charges based upon units of distance, or of weight, or both, and any contrary assumption is outside the record.

Neither is there any showing that if required to make such contract the due administration of customs business would be interfered with or the fiscal operations of the Government impaired. But even so, importers have rights which the Government must regard.

If it be assumed that section 25 of the act of June 22, 1874, was in its effect subsequent to section 2965 of Revised Statutes, no different results can follow.

Section 25. does not refer in any way to section 2965, and can only operate to repeal or modify the same in event it is found inconsistent therewith. Repeal by implication of one statute by another is not favored and will not be indulged in unless it be found that the respective statutes can not both be given force and effect, in which case the later in date will prevail.

Applying that rule here, we find that section 2965 provides that "all charges for storage, labor, and other expenses" accruing on merchandise of the kind here "shall not exceed in any case the regular rates for such objects at the port in question." This language is plain and easy of interpretation and results not only in uniformity, but in fair treatment of the *objects* mentioned in the section.

Section 25 relates wholly to the letting by contract of public cartage of merchandise, which would include that referred to in section 2965, and is entirely silent as to what charges for said cartage shall be made to the owner of the merchandise transported thereunder. The provision for a charge not to exceed "regular rates for such objects at the port in question" can be given full force, and the Secretary of the Treasury be also untrammeled in letting the contract. Had it been intended that he should collect his flat contract rate against each particular object transported thereunder, whether reasonable or unreasonable, and if more than the commercial rate, it were easy for Congress to have so declared. We think it more consistent with reason to say that it was not intended to thereby authorize the charge of thrice the regular commercial rates at the port in question, as is attempted here. Then, too, the construction contended for results in the withdrawal of the regular rate provision so far as cartage is concerned and still requires that as to storage and labor charges the regular rates shall be paid. This discrimination is not necessary to give full force and effect to section 25 and no good reason appears why it should be made.

The argumentative illustrations of mail and railroad rates urged as supporting a different conclusion make equally in favor of the views we have expressed, if carried to their honest and logical end, because in every such case it is a matter of common knowledge that when the whole scope of the business is concerned, either distance, size, weight, or character of objects transported affects the charge, while the construction sought to be given the statute before us wholly disregards those conditions.

Finally, it may be said that the question we have before us relates to the rate which may be charged under the statutes for transporting the particular merchandise, and it may well be doubted if the various last above-mentioned matters, as well as others we do not refer to, afford any basis for or support a determination of this case.

The judgment of the Board of General Appraisers is *affirmed.*

### DISSENTING OPINION.

Dissenting opinion by DE VRIES, Judge, with whom MARTIN, Judge, concurs:

We are constrained to dissent in this case. A charge of 18 cents per case for drayage transportation from the wharf to the Government warehouse at the port of Baltimore of unclaimed merchandise

while in the custody of the collector is here challenged as contrary to the provisions of the Revised Statutes, section 2965.

The sole testimony offered in support of protestant's claim, which was sustained by the Board of General Appraisers, was what was testified would be the regular charge, 6 cents, for the transportation of *matches* for the same distance by private employment per individual engagement. Upon this testimony is predicated a conclusion that the Government charge is unauthorized by law and unreasonable.

Section 2965 of the Revised Statutes was a provision of the act of March 28, 1854. It was codified in the Revised Statutes as section 2965, as follows:

SEC. 2965. Unclaimed merchandise required by existing laws to be taken possession of by collectors of the customs may be stored in any public warehouse owned or leased by the United States, or in any private bonded warehouse authorized by this title, and all charges for storage, labor, and other expenses accruing on any such merchandise, not to exceed in any case the regular rates for such objects at the port in question, must be paid before delivery of the goods on due entry thereof by the claimant or owner; or, if sold as unclaimed goods, to realize the import duties, the charges shall be paid by the collector out of the proceeds of the sale thereof before paying such proceeds into the Treasury as required by existing laws.

The reasoning of the opinion of the majority of the court herein and of the Board of General Appraisers and the Treasury Department in the several cases cited is based upon the language of this section of the Revised Statutes unaffected by other provisions of the law.

The preexisting statutes codified as the Revised Statutes of the United States were approved and became effective as such June 22, 1874. Approved and becoming effective the same day, June 22, 1874, and as section 25 of "An act to amend the customs-revenue laws," etc., Congress enacted as follows:

SEC. 25. That public cartage of merchandise in the custody of the Government shall be let after not less than thirty days' notice of such letting to the lowest responsible bidder giving sufficient security, and shall be subject to regulations approved by the Secretary of the Treasury.

While the two acts bear the same date of approval, as to the former it was by section 5601 of the Revised Statutes provided:

SEC. 5601. The enactment of the said revision is not to affect or repeal any act of Congress passed since the first day of December, one thousand eight hundred and seventy-three, and all acts passed since that date are to have full effect as if passed after the enactment of this revision, and so far as such acts vary from or conflict with any provision contained in said revision they are to have effect as subsequent statutes and as repealing any portion of the revision inconsistent therewith.

The act of June 22, 1874, section 25, in so far as its language modified the previous act of 1854, codified as section 2965, Revised Statutes, therefore expressly amended or repealed the same.

This legislation, therefore, seems to have expressed this legislative status: Prior to the enactment of said section 25, drayage charges for

unclaimed goods in the custody of collectors of customs and for the purposes of customs administration as to such goods were to be contracted by the collector of customs at the port of importation as in his discretion seemed prudent. Thereunder he might let the contract for such by private engagement or public advertisement or otherwise. That it was a matter of individual arrangement and adjustment in every instance is further evidenced by the provisions of section 2965, wherein it is provided that such "charges shall be paid by the collector out of the proceeds of the sale thereof before paying such proceeds into the Treasury as required by existing laws." That statute made the incurring and disbursement of such charges matters relating to the specific importation, and hence the practicability of compelling the collector, and his ability in such cases, to adjust these charges with reference to the usual charges and the regular commercial or business rates prevailing at the given port for the same service. The enactment, however, of said section 25 changed this condition. It deprived the collectors at their respective ports of the power to negotiate and contract as to the drayage of an individual quantity or lot or goods as would any merchant at that port, wherein would be figured the exact kind and quality of goods to be transported, the distance of the haul of the particular lot, the possibility of the benefits of a shorter equalizing the disadvantages of a longer haul, the annual business compared with a single engagement, and the desire for further business, and required that drayage charges for the transportation of merchandise in the custody of collectors of customs should be let for definite periods of time upon 30 days' notice to the lowest responsible bidder. To the extent of this modification and curtailment of the legal powers of the collectors of customs section 25 of the act of 1874 repealed and modified section 2965 of the Revised Statutes.

In this new legal status, with the powers of the collector thus circumscribed by law, the nature of the contract which the collector was to make was greatly modified. The provision of section 2965, which required that reasonableness of such contracts when made by a collector should be measured and determined by similar contracts at that port made by merchants was supplanted in the law by a provision requiring that the reasonableness and legality of contracts thus let by the collector of customs should depend upon the statutory requirement that they should be let to the lowest responsible bidder after 30 days' public notice and *as required by the Secretary of the Treasury.* There is no question, and it is not suggested by any one in this case, that the requirements of the law in this particular were not duly observed by the collector of customs at the port of Baltimore. It would seem, therefore, that having pursued the law and the regulations in this behalf expressly authorized by Congress for such cases,

any charge made by the collector of customs in accordance therewith is at least until so specifically challenged a valid charge.

Furthermore, if there is sustained any legal challenge in this case it must be based upon the fact that the law has not been pursued or that the regulation which controlled the nature and character of the charges by the Secretary of the Treasury was unreasonable. It appears from the record that this regulation, which the Secretary of the Treasury is expressly empowered under section 25, *supra*, to make, controlling the particular situation, is and has been that such contract shall be for a flat rate, taking into consideration neither the distance of the transportation nor the size of the packages. We are not perpared to say that, acting upon the experience of more than half a century with the transportation of goods within the customs custody, such a regulation or charge made thereunder is unreasonable. Certainly upon the evidence in this case, which concerned the transportation of but one ascertained class, size, and weight of merchandise for a definite distance, it ought not to be declared that this requirement of the Treasury Department made nder a statute expressly vesting in the Secretary of the Treasury the power of determination as to the character of such charges, and which no doubt has been continued for quite half a century, is unreasonable.

It was in effect held by the Supreme Court of the United States in United States *v.* Whitridge (197 U. S., 135, 141) that "public and well-known facts" attending the policy of the Treasury Department in the administration of a statute as evidenced by its official requirements are a proper basis for the conclusion of the court.

It is equally likewise known that, in the enforcement of section 25 of the act of 1874, acting under the power therein expressly vested in the Secretary of the Treasury, it has been the well-known policy expressed in the regulations for more than a quarter of a century at least to let such contracts upon flat rates. The wisdom and the fairness and the justice of that course are testified to by the fact of the limited number of instances wherein such contracts have been questioned.

This policy of the Treasury Department thus expressed is not one without a basis of reason and law or confined to an individual class of cases, but is one which attends the administration of the customs laws in various branches thereof. It is based in part upon the sound legal maxim *de minimis non curat lex* and upon the fact that in the administration of this law the expenses and delays of its administration in the interests of the public can be greatly minimized by a nonobservance of too minute detail. An illustration is had in the practice of collectors of customs in determining amounts of duties. For many years it has been the custom in the presence of this policy not to take into consideration fractions of a dollar. If the amount aggregates over 50 cents, a dollar is taken; if less, nothing, or the next

lower sum in even dollars. This policy of the enforcement of the law has not only been adjudicated and long settled by administrative practice and has been presumably known to the Congress, but has rested undisturbed for so long a period of time that under the principle of legislative and administrative construction it has become a part of the law of the land. See G. A. 6479 (T. D. 27716).

This brings us to another phase of the question. It would seem, were we to follow the conclusion of the majority of the court in this case, it would be impracticable, if not quite impossible, for the Government to adopt the policy in the making of drayage charges as indicated by the opinion in this case. We respectfully submit that this of necessity will follow, and that interminable detail and an impossibility of performance with no more exact or approximate conformity to regulate commercial rates than that here occurring would of necessity follow. It is said:

> If it is for the best interests of the Government to let its cartage contracts upon the flat-rate basis, and the record in this case does not show whether such is or is not the fact, although it may be presumed, nevertheless, we see no practical or other objection to requiring the Government to charge the regular commercial or business rates prevailing at a given port for the same services. It would seem that if in a particular case this flat rate was lower than such regular rates the Government would be justified in requiring importers to pay the regular rates; but however this may be, if such flat rate is higher than the regular rates we think the importer can not be required, in view of the statute, to pay a rate that is so much in excess of the regular rates as was charged here.

Before acceding to the doctrine stated, which has the virtue and persuasiveness of individual fairness, let us bear in mind that the collector in making these charges is controlled by a statute which requires that such contracts must be let for a stated period of time upon 30 days' public notice; that at the time of letting such contracts no individual importation is in view to be made the basis thereof, and that such contracts must cover an infinite variety of sizes and weights of packages containing an equally infinite variety of merchandise, frangible, solid, and otherwise, to be hauled for an infinite variety of distances, ranging from the width of the street, possibly, to longer distances of transportation. It is to be here borne in mind that the statute which controls the character of the contract to be let by the collector covers not only drayage from the wharves to the public warehouses, but the other great variety of distances which may occur in the governmental transportation of goods.

The impracticability, if not the impossibility, of letting such a public contract is well illustrated here. The sole testimony in this case, for example, is that the importer could have had these cases of matches transported for this definite distance at 6 cents instead of 18 cents, as charged by the Government. It does not follow that this importer could have had a case of iron or lead or diamonds of the

same size transported the same distance for the same price. Nor does it follow that any drayman would have transported a case half that size filled with dynamite for the same price. So that if a public contract covering an extended period of time, to be let upon public notice of 30 days, is to be tested as to its legality and its validity and reasonableness by testimony as to the cost of transporting a single class or kind of merchandise of a particular weight for a particular distance, in order that these public contracts made by the Government should stand this test of reasonableness, there would have to be covered into the same as a part thereof specifications covering not only every fraction of distance over which the merchandise might be transported, but every variety and kind and class of merchandise of every variety and kind and class of weights, sizes of packages, and conditions as to inflammability and otherwise. And, then, this being so done under the rule of this case whenever it was shown that in an individual instance of this great variety of such a charge made was *admeasured alone* greater than could be secured *under different conditions and circumstances*, denial of the Government's right thereto would be upheld.

It is a well-established and fundamental principle of law that a construction shall not be put upon a statute which will render its enforcement impossible or impracticable. Particularly must this be true in the construction of the customs administrative laws and regulations. In such cases the courts have always upheld the principle that where the purpose of the statute is the collection of the revenues necessary for the conduct of the affairs of the Government, though stringent and though rendering a minor hardship in the particular case, such laws must be upheld upon the ground that the individual sufferer must yield to the public good and the fiscal necessities of the Government.

A construction should not be put upon a statute which makes its performance impossible or impracticable. Chew Heong *v.* United States (112 U. S., 536, 554, 555); Shaw *v.* Railroad Co. (101 U. S., 557, 562, 565); People's Bank *v.* Batchelder (51 Fed., 130, 136).

We are particularly impressed with the fact and the public knowledge that the Government in the administration of its customs laws has, after many years of experience, found this class of charges the most practicable and satisfactory in the expeditious transportations of this branch of the Government's business and that it is well known that such has been the policy of the Government and the Treasury Department, acting under the express authority granted by this statute, for more than a quarter of a century at least. In this view this court should long hesitate to interrupt this well-settled practice of the Government, particularly when the rule enjoined by the court is equally vulnerable to like assault.

Epitomized, Congress having vested in the Secretary of the Treasury the duty to regulate and let by advertised contract these drayage charges, and he, with all the conditions of long and short hauls, probable sizes of packages, annual or stated amount of the probable business at that port, and the experience of himself and all predecessors in office in such matters, not only at that port but at every other port in the country, before him, exercised that power and judgment in the requirement of a flat-rate contract. Being a matter vested by Congress in him, and the presumption being that it was rightly exercised, it does not seem that this court, without other evidence than of one importer in case of a single haul of but one kind of merchandise, should declare that duty illegally or unreasonably performed by the Secretary. In so doing, it seems to us that this court sets up its judgment on insufficient evidence as to what is a reasonable charge under the same condition wherein Congress has expressly intrusted the matter to the judgment of the Secretary, which is supported by the presumption of a proper performance of his official duty. Indeed, this flat-rate charge is in keeping with the experience of and charges found and established by municipalities and quasi public corporations as the only practicable method when dealing with an unknown number of people and an infinite variety of uncertain conditions. Thus the same charge is exacted by Congress for carrying a letter thousands of miles as for a block. The Government contracts for mail carriage involves the same principle. In almost all cases of mileage railroad rates a minimum charge is made of not less than a fixed sum many times exceeding, to the traveler of a short distance, the regular rate. An exact example is afforded in street car charges, where the empirical wisdom of years and the infinite detail and uncertain distance and weights of carriage involved, has approved the same charge for transporting, for example, a 50-pound child half a square as is often charged for transporting a 100, 200, or 300 pound patron many miles. So that we are confronted on every hand with and encounter every day systems of flat-rate charges precisely like that required by the Secretary of the Treasury in these cases, all of which argue that experience on every hand in dealing with charges made the public involving infinite detail and distances and innumerable conditions entering into exact equity demand and justify in the interests of the public service and adequate collection of the revenues precisely similar systems to that here adopted. In this view we are unable to say, on this fragment of evidence, at least, that such contracts and charges are unreasonable.

Waiving all these considerations, it would seem that the literal and grammatical construction of section 2965, read in connection with said section 25 of the act of 1874, leads to the same conclusion. It relates and requires that the rates thereof shall not "exceed * * * the

regular rates *for such objects* at the port in question." What is the antecedent of "such objects"? Why, solely and only merchandise in the possession of the collector. After the enactment of section 25, *supra,* in 1874, at least, the only regular rate for carting "such objects" was the regular Government rate fixed by contract made in accordance with said section 25, the rate here charged. Congress by this section, presumably for good and sufficient reasons, substituted in 1874 rates thus established in lieu of such as were previously made by private engagement by collectors for individual services, whereupon these became the "regular rates *for such objects* at the port in question."

Moreover, conceding that the statute of 1854 (U. S. Rev. Stats., 2965) not amended by said section 25 and here applicable, and that it must be held as affecting the contracts of drayage let to the lowest bidder by the Secretary, does this evidence relating to a single haul of one class of merchandise a stated distance prove that the regular rate for hauling various kinds, weights, and classes of merchandise for a year or other definite period whenever demand is made at different distances is unreasonable or that the Secretary has not observed section 2965, Revised Statutes of the United States? Does this evidence overcome the presumption that the Secretary has taken all these matters into consideration and acted within his powers and rightly? We think not.

In our opinion, therefore, there is here shown no justification for overturning a practice long established by the Treasury Department under express authority therein by Congress vested, it not being shown that the law is violated or the requirement unreasonable.