UNITED STATES *v.* MASSON (No. 1366).[1]

"REGULAR" CARTAGE RATES IN PORTS.

A flat rate agreed on by the Government for drayage charges is not conclusive against an importer. His liability is for the payment of the regular rate for service of the sort at the same time and place. United States *v.* Masson (4 Ct. Cust. Appls., 363; T. D. 33534.) On the present record the proof, while not conclusive, is sufficient to support the board's decision that the regular rate at the port of Baltimore for services of the kind in issue was 6 cents and not 18 cents.

United States Court of Customs Appeals, May 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34860 (T. D. 34201).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Submitted on record by appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The present issue relates to certain charges for cartage which were assessed by the collector upon certain unclaimed cases of safety matches at the port of Baltimore. The importations were made in lots of about 50 cases, each case weighing between 240 and 300 pounds. These were carted from the Philadelphia dock to the public stores, a distance of about six blocks, and were there held until they were duly entered for consumption.

Upon liquidation the collector assessed the merchandise with 18 cents per case for cartage, 15 cents per case per month for storage, and 15 cents per case for labor.

---

[1] Reported in T. D. 34479 (26 Treas. Dec., 871).

The importer duly filed his protest against these assessments, claiming that they were more than the regular rates for such services at the time in Baltimore.

The protest was submitted upon evidence to the Board of General Appraisers. The board overruled the claim of the protestant as to the charges for storage and labor, and no appeal was taken by the importer from that ruling. As to the assessment of 18 cents per case for cartage the board held on the evidence that 6 cents per case was the regular rate at the port of Baltimore for such services, and sustained the protest to that effect. The Government now appeals from this decision.

The foregoing recital immediately directs attention to the case of United States v. Masson (4 Ct. Cust. Appls., 363; T. D. 33534), wherein a similar issue raised by the same importer, relating to the same charges for identical services, was decided by this court. The testimony heard in that case has not, however, been incorporated in the present record. The present issue must therefore be decided upon the present record alone, in the light, however, of the general principles which were formulated in the decision of the former case.

It is settled that such charges as those now in question must not exceed in any case "the regular rates for such objects at the port in question." (Sec. 2965, Rev. Stat.) Therefore the primary question at present is whether 18 cents per case was the "regular rate" for carting such merchandise from the dock to the stores at Baltimore at the time of these transactions. It appears from the record that the Government actually paid the sum of 18 cents per case for the cartage in question. This was done in performance of a contract whereby the Government bound itself to pay 18 cents per case flat rate for the cartage of all unclaimed packages of merchandise at Baltimore, regardless of the size or weight of the individual packages, or of the different distances which they were severally carted. Under the rule laid down by this court in the Masson case, supra, such a flat rate is not conclusive upon the importer, and he is not obliged to pay the same if it be in excess of the regular rate for such services at the same time and place.

The present record contains conflicting evidence as to the regular rate for such cartage prevailing in Baltimore at the time in question. The importer, Mr. Masson, who is engaged in the business of importing safety matches at the port of Baltimore, testified that the Ericsson Transfer Co. virtually had all the hauling of goods from the dock in question, and that they had always carted such cases for him over that route at a charge of 6 cents per case; that other draymen had hauled similar packages for him a distance somewhat exceeding this at a charge of 8 or 9 cents per case.

Mr. Briddell, a witness called by the importer, is the president of the Briddell Transfer Co. at Baltimore, and testified that he had

quoted 6 cents a case to Mr. Masson for identical hauling; that this was no special rate; that he had hauled such cases greater distances for 9 cents, although 10 cents would have been a fair rate. The following extracts are quoted from the testimony of this witness:

Q. Then, you were making a rate that you thought would pay for the hauling of Mr. Masson's matches?—A. Yes.

Q. And that rate was not based upon a prevailing uniform rate at the B. & O.?—A. We are obliged when we quote prices, perhaps, like everybody else we make all the profit that we reasonably can, but we are confined by our competitors—we have to quote prices in line in order to get business.

Q. Then, when you quoted a price you did not quote a price that was generally prevalent and well known at the port of Baltimore?—A. In quoting prices I have to be posted as to what is the general price.

 *  *  *  *  *  *  *

Q. Then, Mr. Briddell, you did not quote a regular rate, but you quote a rate that you think will get the business?—A. I quote as high a rate as I think my competitors will permit me to get the business.

The foregoing testimony tends to sustain the claim of the importer, since it tends to show that 6 cents per case was a price which admitted of some profit, and which was as high as the transfer company could obtain in view of the general competition for such business at the port.

On the other hand, Mr. Haines, a witness called by the Government, is also in the transfer business in Baltimore, and testified that 6 cents per case was not the regular rate for such cartage in that city; that there really was no "regular rate" for such hauling in Baltimore, but that 15 cents per case would be a fair price for the same.

In addition to the testimony of these witnesses it appears that the Government near the time of these transactions called for written bids from various transfer companies in Baltimore for the hauling of unclaimed merchandise at that port. The bidders were required to distinguish between different distances and routes of carriage, but again the bids were to be flat-rate only in respect to the size and weight of the several packages. The Government received a number of written bids in answer to this request, and in every case the flat-rate charge for hauling packages over the route now in question was more than 18 cents apiece. In each written bid it was certified by the bidder that the price named therein did not exceed the usual commercial rates for such services at the port of Baltimore. This fact is offered by the Government as proof that the regular rate for the cartage in question was actually more than the Government's charge in the present instance. These bids, however, are open in part to the objections stated in the Masson case, *supra*, since they do not particularize the charge for packages of the size and weight of those now in question. Neither do they tend to show that an average or flat rate is ordinarily the "regular rate" for hauling merchandise at Baltimore, since the bids simply responded in that particular to the terms prescribed in the request of the Government. It is true

that Mr. Veazy, the Government auditor at the Baltimore custom-house, testifies that "the idea was that while we could not meet the question of a flat rate of different kinds of merchandise, we endeavored to meet it for the routes and distances, and we asked for a separate proposal on each one of these 10 routes." No explanation, however, is given to show just what the witness means by his statement that the Government "could not meet the question of a flat rate of different kinds of merchandise." So far as appears from the record the transfer companies had not refused to bid for the work upon a basis of the size and weight of the several packages as well as the distances of carriage. Indeed, the testimony rather implies that the flat-rate bid was unusual at that port. This is illustrated by the testimony of the witness Briddell, who had filed a flat-rate bid in answer to the Government's request. In reference to this bid he stated as follows:

Q. You mean to say that if you had your bid accepted your hauling of these loads to general-order store would have been within that contract?—A. I mean to say there is no rate quoted; there is a combination; it is a three years' contract. I would have all the business for three years for the Government for unclaimed packages.

Q. Suppose you had to haul a binder under that?—A. I would have to handle it for 25 cents.

Q. Suppose it was a hand organ?—A. If it was a spool of cotton it would be 25 cents.

     *       *       *       *       *       *       *

By General Appraiser McCLELLAND: Would it be practicable to make such a bid as you have there made except upon a sort of general average basis?—A. That is the only way, on a general average basis. A man must be somewhat familiar with the class of goods handled by the Government.

By Mr. McNABB: Did you or did you not know in this bid that the rates that you bid were not in excess of the usual commercial rate prevailing at the port of Baltimore?—A. I did, but that covers a certain amount of risk.

The foregoing testimony related to the flat-rate bid which the witness had filed in answer to the Government's request for bids as above explained, and the witness evidently meant that such a flat-rate bid could only be made upon a "general average basis," requiring a knowledge of the class of goods handled by the Government. Such a statement does not imply that the average or flat-rate bid was the only or even the usual form of bid for such work at the port of Baltimore.

Upon the present record the board found in favor of the importer's claim for 6 cents as the regular rate for such cartage at Baltimore at the time of the service in question, and upon a consideration of the somewhat meager and conflicting evidence in the case that decision appears to be supported by a measure of proof sufficient to sustain it upon appeal. The decision is therefore *affirmed.*

DE VRIES, Judge: For the reasons set forth in the dissenting opinion in United States *v.* Masson (4 Ct. Cust. Appls., 363–367; T. D. 33534) I dissent in this case.