(C.D. 2126)

Davies Turner & Company
Pacific Wine Company } *v.* United States

United States Customs Court, Third Division

(Dated October 20, 1959)

*Wallace & Schwartz* (*Joseph Schwartz* and *James H. Lundquist* and *Barnes, Richardson & Colburn* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before Johnson, Donlon, and Richardson, Judges

Donlon, Judge: The principal issue before us in these two suits, consolidated for trial, is an issue of law. It may be summarized as follows: Whether the cost of carting general orders merchandise from the place of unlading to the place where the collector holds the merchandise in his custody, which Congress has made an expense that is to be paid by the consignee of the merchandise if and when entry is completed, is to be such a cartage cost as is reasonable under the circumstances and not excessive.

There is a subsidiary issue of fact. If we hold that Congress intended that the expense of cartage to be paid by the consignee is such cartage cost as is reasonable under the circumstances and not excessive, then we shall have to consider whether plaintiffs have borne their burden by competent proofs (1) that the costs which were exacted by the collector as such expense, as a condition precedent to release of the merchandise, were unreasonable and excessive, and (2) what, in each suit, the reasonable and not excessive cartage cost is.

It is not in dispute that delayed entry brought the merchandise in both suits within general orders, by virtue of which the collector caused the merchandise to be carted to the public stores in the customhouse in Chicago and there held it in his custody until entry, in each case, was completed.

It is not in dispute that the Chicago collector had, at the dates of cartage in each suit, a contract with Lasham Cartage Co. under which unclaimed merchandise was to be carted by Lasham to Government stores at a flat contract rate of $1.10 per packeage, effective at the time the merchandise of suit 309871–K was carted, and at a rate of $1.25 per package, effective at the time the merchandise of suit 58/1955 was carted; that the term "package" included "crates, cases, barrels, casks, bales, bundles, etc., in fact, any container whatsover"; that there was no difference in cartage rate, under the Lasham contracts, based on distance hauled, value of the goods carried, or the size or weight of a "package."

It is in evidence, and defendant seems not to deny, that cartage generally in the Chicago customs collection district takes account of such differences as these in fixing cartage rates, and that there would not usually be a uniform cartage charge that ignored those and perhaps other factors, as the Lasham contracts did.

We first proceed to rule on plaintiffs' motions to strike from the record certain exhibits. These exhibits were admitted into evidence by the trial judge on defendant's offering, subject to ruling of this division on the motions of plaintiffs to strike the exhibits from the record. These are defendant's collective exhibits A, B, C, and D. (The record lists these as exhibits for identification. However, it appears that they were admitteed into evidence by the trial judge; plaintiffs, having objected to their admission, then moved to strike the exhibits from the record; and the trial judge reserved decision on plaintiffs' motions. The record should be corrected to show that these exhibits are in evidence, and not merely for identification.)

It is our view that the objections of plaintiffs go rather to the weight to be accorded these documents, than to their admissibility. Exhibits A and C are requests of the collector of customs at Chicago for bids for cartage, respectively, for the periods July 1, 1956, to June 30, 1957 (suit 309871–K), and July 1, 1957, to June 30, 1958 (suit 58/1955). Exhibits B and D are the cartage contracts made by the Chicago collector with the successful bidder, Lasham Cartage Co. (exhibit B, suit 309871–K, and exhibit D, suit 58/1955).

The requests for bids, and the contracts concluded pursuant to bidding responsive to such requests, state the terms and conditions of Lasham's cartage obligation. Plaintiffs have introduced testimony as to conditions they deem relevant in proof of their contention that the Lasham cartage charges are unreasonable and excessive. Defendant urges that the terms on which bids were filed and the cartage contracts also have a bearing on the reasonableness of the cartage rates.

We find these exhibits admissible, for what weight they may have. We deny plaintiffs' motions to strike from the record defendant's exhibits A, B, C, and D.

We are not impressed with plaintiffs' argument that the cartage contracts between the collector and Lasham Cartage Co. had no bearing on the merchandise of these suits. The basis of this argument is that the Lasham contract deals with cartage of "unclaimed" merchandise and not with cartage of general order merchandise; that unclaimed merchandise is, by definition in section 491 of the Tariff Act of 1930, merchandise left in customs custody for 1 year from the date of importation without payment of all estimated duties and storage or other charges; that this merchandise, in both suits, is general order merchandise which was not left in customs custody for 1 year from date of importation and on which all estimated duties and storage and other charges have been paid.

This argument seems to ignore section 448 of the Tariff Act of 1930, with respect to unlading of merchandise, in which it is provided that unladen merchandise not timely entered "shall be sent to a bonded warehouse or the public stores and *held as unclaimed* at the risk and expense of the consignee . . . ." [Emphasis supplied.] What did Congress intend when it provided that general order merchandise shall be "held as unclaimed" in a bonded warehouse or the public stores, at the risk and expense of the consignee? Surely this means that such risks and expenses are, for such merchandise, like the risks and expenses of unclaimed merchandise. To construe section 448 otherwise denies effect to the words "as unclaimed" which Congress used to express its intention. Congress did not say that general order merchandise *is* unclaimed merchandise. It did say that such merchandise, including the merchandise of these suits, *is to be sent to* bonded warehouse or *the public stores and held as unclaimed.*

We are of opinion that cartage arrangements properly made by the collector for unclaimed merchandise, absent express limitation, relate to the cartage of general order merchandise sent to public stores and there held, as Congress provided, as *unclaimed.*

Disposition of these matters brings us to consideration of the principal question of law in these suits, that is, whether the cartage charge importers are required to pay must be a reasonable charge for the service performed.

Prior to 1922, there was a provision of law (sec. 2965, Revised Statutes, apparently enacted at least as early as 1854) that all charges for storage, labor, and other expenses accruing on *unclaimed* merchandise stored in any public warehouse shall not "exceed in any case the regular rates for such objects at the port in question. . . ." Section 2965 was repealed by section 642 of the Tariff Act of 1922. (42 Stat. 989.)

Our appeals court held that the rates contemplated by section 2965 were the regular commercial or business rates charged for like work at the port where the services were rendered, and that no other construction can obtain. *United States* v. *Masson*, 4 Ct. Cust. Appls. 363, T.D. 33534.

The court, in its opinion, said:

> If it is for the best interests of the Government to let its cartage contracts upon the flat-rate basis, and the record in this case does not show whether such is or is not the fact, although it may be presumed, nevertheless, we see no practical or other objection to requiring the Government to charge the regular commercial or business rates prevailing at a given port for the same services. It would seem that if in a particular case this flat rate was lower than such regular rates the Government would be justified in requiring importers to pay the regular rates; but however this may be, if such flat rate is higher than the regular rates we think the importer can not be required, in view of the statute, to pay a rate that is so much in excess of the regular rates as was charged here.

> The Government is always represented by its proper officers at ports of entry where these questions arise, so has the means to ascertain what the regular rates are, and should in a reasonable way conform thereto. [P. 366.]

The reports and hearings before congressional committees, at the time of the repealer of section 2965 in the Tariff Act of 1922, seem not to throw light on the problem now before us. Section 2965 is one of nearly 300 sections of the Revised Statutes which were repealed, as a group, by section 642 of the Tariff Act of 1922. Many, perhaps most of these, dealt with administrative matters.

If we assume *arguendo* that the repeal of section 2965 took away from importers of general order merchandise held in public stores the right they previously had to a ceiling over charges equivalent to the regular commercial or business rates prevailing for like work or services in that port, it does not at all follow that Congress intended that collectors might thereafter exact from the importers of general order merchandise held in public stores charges that are shown to be unreasonable and excessive. Indeed, defendant seems not to argue that collectors can require importers to pay unreasonable and excessive cartage charges. Defendant's argument seems to be, rather, that these charges are reasonable and not excessive.

Happily we live under a legal system which protects citizens against the unreasonable exactions of their Government. That is a basic concept of the common law, of which we Americans are inheritors. It has been noted that Congress set up a standard of what was reasonable, prior to 1922. Where the legislature has not defined what is reasonable, "the courts must determine what is reasonable." *Munn* v. *Illinois*, 94 U.S. 113, 134. The *Munn* case involved warehouse charges. As to rates charged for transportation, the rule that the courts have

the duty to determine what is reasonable has been stated in many cases. In *Chicago, M. & St. P.R. Co.* v. *Minnesota*, 134 U.S. 418, the Supreme Court said, at page 458:

The question of the reasonableness of a rate of charge for transportation by a railroad company, involving as it does the element of reasonableness both as regards the company and as regards the public, is eminently a question for judicial investigation, requiring due process of law for its determination.

We hold that the cartage charge which an importer of general order merchandise is required to pay shall not be in excess of a reasonable charge for the service performed.

Were the cartage charges which were exacted of these plaintiffs, pursuant to sections 448 and 490, Tariff Act of 1930, and the contracts made by the Chicago collector with Lasham Cartage Co., reasonable charges for the services that were performed?

Plaintiffs showed, by testimony of qualified witnesses, that the prevailing rates for cartage of such merchandise by responsible carriers in Chicago from the respective pickup points to the public stores, under the circumstances and at the times of these cartages, were substantially lower than the charges the collector required these plaintiffs to pay. Plaintiffs also showed that cartage rates in Chicago are not uniform for any distance, but vary according to the distance hauled and other factors.

Defendant showed that the collector requires importers of general order merchandise to pay a flat "per package" cartage rate, regardless of distance hauled. It appeared that under the collector's contracts with Lasham these plaintiffs were charged at the same rate for short hauls (from the Wabash freight station and Calumet pier) as was charged importers whose goods were hauled all the way from Gary, Ind., or other distant points within the Chicago collection district, into the Chicago collector's stores.

Defendant's chief argument is that the uniform cartage rate, disregarding factors that customarily produce different cartage rates, is justifiable here because there is a credit risk. There may be room to argue that a known credit risk could augment the normal cartage charge. It is difficult to see what credit risks would favor the importers whose merchandise has a long haul into the public stores, at the expense of those whose merchandise has a short haul. Moreover, if there was a credit risk as to these plaintiffs, it does not appear. The fact is that they paid these exactions, even though they regarded the charges as unreasonable and excessive, in order to get possession of their merchandise.

We hold that the flat Lasham contract rate was an unreasonable cartage charge to these plaintiffs. Because the defendant may have been denied opportunity to adduce testimony as to what would be reasonable charges for the cartage services that were performed for

the plaintiffs, submission is set aside and the cases are restored to calendar at the next Chicago term, in order to afford the parties opportunity to present further proofs as to what rates would be reasonable.

It is so ordered.