## (C. D. 1097)

ARMAND SCHMOLL, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 24, 1948)

*Lamb & Lerch* (*John G. Lerch* and *Thomas J. McKenna* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue, John J. Antus,* and *Michael Stramiello, Jr.,* special attorneys), for the defendant.

(*Rufus J. Trimble* appearing specially for the Federal Reserve Bank of New York to quash subpoena duces tecum served upon it April 11, 1946.)

Before CLINE, EKWALL, and LAWRENCE, Judges; CLINE, J., not participating

EKWALL, Judge: This is a proceeding under sections 514 and 515 of the Tariff Act of 1930 (19 U. S. C. A. secs. 1514, 1515) in which the

plaintiff protests the action of the collector of customs at the port of New York in liquidating an entry of hides imported from Brazil, the date of exportation from that country being October 7, 1935. In said liquidation the collector converted the currency of the invoice, Brazilian milreis, into United States dollars at a rate ($.083740) which had been certified to the Secretary of the Treasury by the Federal Reserve Bank of New York. (68 Treas. Dec. 344, T. D. 47910.) The provision of the statute applicable to conversion of currency is found in section 522 (c) of the said tariff act (46 Stat. 739, 31 U. S. C. A. sec. 372 (c)).

Said section 522, in subsection (a) thereof, provides that the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value, and that it shall be estimated quarterly by the Director of the Mint and proclaimed by the Secretary of the Treasury. Subsection (b) provides that for the purpose of assessment and collection of duties upon merchandise imported into this country, foreign currency shall be converted, whenever necessary, into currency of the United States at the values proclaimed by the Secretary under section 522 (a) for the quarter in which the merchandise was exported. However, subsection (c) contains an exception, which is in the following language:

If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. * * * For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such federal reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

No question is involved here concerning the value of the Brazilian milreis as estimated by the Director of the Mint under subsection (a) above, nor is it disputed by the plaintiff that the proclaimed value varied "by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation," i. e., October 7, 1935. Plaintiff's contention as set forth in its brief is that the collector failed to comply with the terms of the statute in that he used as the basis of conversion a rate which had been certified to the Secretary of the Treasury by the Federal Reserve Bank of New York as a "nominal rate" (T. D. 47910, *supra*), and that by so doing he disregarded the buying rate for cable transfers.

Said T. D. 47910 states:

\*    \*    \*    \*    \*    \*    \*

The appended table of the values of certain foreign currencies as certified to the Secretary of the Treasury by the Federal Reserve Bank of New York under the provisions of section 522 (c), Tariff Act of 1930, during the period from October 4 to 10, 1935, inclusive, is published for the information of collectors of customs and others concerned.

\*    \*    \*    \*    \*    \*    \*

Following this statement is a list of various countries with the values of their currency on certain specified dates from October 4 through October 10, 1935. The rate given for the Brazilian milreis for October 7 is $.083740, preceded by a small figure 1. By reference to a note, this is stated to be the "Nominal rate. Firm rates not available."

At the trial Government counsel moved for a dismissal of the action on the ground that the pleadings were insufficient in that they did not set forth distinctly and specifically the reasons for the objection to the collector's action. The protest sets forth, among other objections, the following:

\* \* \* The reasons for objection to your action are that an erroneous and an improper rate or value was used by you, at the time of liquidation, in converting the milreis value of the hides into United States dollars. You have collected duty in amounts greater than that contemplated by law and you have erroneously interpreted Section 522 of the Tariff Act of 1930, resulting in a greater exaction than contemplated by law. \* \* \*

The motion to dismiss was overruled and the court found the protest sufficient to inform the collector of the reasons for the plaintiff's objection to said collector's action. This ruling is in line with decisions which have consistently held that such pleadings are not required to be made with technical precision, but are sufficient if they show fairly that the objection afterwards made at the trial was in the mind of the party and was brought to the knowledge of the collector. This principle has been so repeatedly declared by this court, the Court of Customs and Patent Appeals, and the United States Supreme Court that citations are unnecessary.

An amendment to the protest was granted. Said amendment is as follows:

Moreover, you should have converted at the buying rate in the New York market at noon on the date of exportation of the merchandise, under Section 522 (c), such buying rate varying by more than 5 per centum from the rate proclaimed by the Secretary of the Treasury under the provisions of Section 522 (a).

Counsel for the Government further moved to dismiss the protest on the ground that:

\* \* \* if it is established that a rate has been certified, and that the rate which is certified states on its face by its certification that it has been certified under Section 522 (c), and if, as is the fact in this case, the Secretary of the Treasury has published the rate saying that he is doing so in conformity with Section 522 (c),

*then the action of the Federal Reserve Bank in certifying that rate is final, conclusive, and binding on all parties, and not subject to judicial review.*

Decision on this motion was reserved. We are of the opinion and so hold that the motion should be and the same is hereby denied. The question before us is the legality of the action of the collector in converting currency under section 522 (c), *supra.* That is an issue which is justiciable, whether or not we determine that this court has authority to review the accuracy of the rate certified or the accuracy of the procedures by which it was determined.

The first witness called on behalf of the plaintiff was a representative of the Federal Reserve bank. Said bank had been served with a subpoena *duces tecum* requiring it to appear, to testify, and to produce:

1. All of your records, correspondence, communications, and reports specifically involving the buying rate in the New York market for cable transfers payable in Brazilian milreis on October 1, 2, 3, 4, 5, and 7, 1935, and,

2. Particularly the correspondence addressed by the Commissioner of Customs, Treasury Department to the Federal Reserve Bank dated February 15, 1946 relating to the furnishing by the Bank to the Collector of Customs or the Customs Information Exchange of the buying rate for cable transfers payable in Brazilian milreis together with the original or copies of all correspondence passing between the Federal Reserve Bank and the Treasury Department or any of its bureaus relating to the certification by the Bank of the buying rates for cable transfers payable in Brazilian milreis between April, 1933 and August, 1936.

The Federal Reserve bank moved to quash said subpoena *duces tecum* on the ground that it is unreasonable and oppressive; the evidence sought to be produced is irrelevant, incompetent, and immaterial to the issues involved; the evidence sought to be produced consists of confidential files and records of the United States of America and its agencies which are immune from subpoena; and that the evidence sought to be produced pertains to rates of foreign exchange certified by the Federal Reserve Bank of New York which are final and conclusive and not subject to judicial review. In its memorandum in support of this motion, counsel sets forth that the Federal Reserve bank performs numerous functions of the United States Government. Among such functions is the issuance of currency of the United States, including Federal Reserve notes, which are obligations both of the bank and of the United States, and it also acts as depositary and fiscal agent of the United States. In determining and certifying rates of foreign exchange for use in the assessment and collection of customs duties, said bank, it is contended, is acting in performance of a governmental duty in aid of the administration by the United States Government of one of its primary executive functions, i. e., the collection of customs duties, and that the determination and certification of such rates is an administrative or executive function of the Government requiring skill and the exercise of judgment and discretion.

In support of its position counsel for the bank cites the early cases of *Cramer* v. *Arthur*, 102 U. S. 612; *Hadden* v. *Merritt*, 115 U. S. 25; and also *Amalgamated Textiles* v. *United States*, 24 C. C. P. A. (Customs) 74, T. D. 48378.

The court upon consideration of the arguments presented on behalf of the Federal Reserve bank granted the motion to quash. This action is in line with the decisions.

The substance of plaintiff's contention, as urged in its brief, is that the Federal Reserve bank failed to certify the proper rate of conversion under the statute. Plaintiff contends that the collector has failed in his duty in that he has adopted a rate which is not "the buying rate for cable transfers." This contention fails to take into account the discretion granted to the Federal Reserve bank by the terms of the statute, i. e., that it may:

(1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

The statute contains no provision for the use of discretion on the part of the collector as to the rate which he is required to use. The language is clear that the currency of the invoice must be converted at "a value measured by such buying rate," but the buying rate contemplated is that which shall be determined by the Federal Reserve Bank of New York, which agency is given discretion to calculate such rate, if necessary. It is plain to the court that in denominating the rate certified as "nominal" said Federal Reserve bank indicated that such rate has been determined by calculation under the circumstances surrounding Brazilian currency transactions on the day of exportation of this merchandise. We know of no authority nor have we been furnished with citations holding that the judicial review of the collector's decisions provided in section 514 has been extended to include a review of the accuracy of the process by which the Federal Reserve bank determines a buying rate. Section 522 (c) gives the Federal Reserve bank authority to determine a rate of exchange. This function is one that involves the use of executive skill and discretion. In the absence of an express statute permitting judicial review, the determination of the bank is final. This was indicated in the case of *Barr* v. *United States*, 324 U. S. 83, where the Supreme Court made the following statement:

* * * The determination of the rate is left exclusively to the Federal Reserve Bank of New York. It alone is given discretion in computing it.

That case involved the question, among others, of whether the currency of an invoice of imported goods should have been converted by the collector of customs at the "official" rate for such currency

or the "free" rate. The court, speaking through Mr. Justice Douglas, summarized the history of the legislation involving conversion of foreign currency, as follows:

It was noted in *United States* v. *Whitridge*, 197 U. S. 135, 142, that the assessment of an *ad valorem* tax on imports involved an ascertainment of the true value of the article taxed as of the date of the tax and that the invoice price was an approximate measurement of that value. As pointed out in that case, the history of the statutes shows a closer approximation to that value as the legislation had evolved. And the enactments made subsequent to the decision in the *Whitridge* case are consistent with that trend. In the beginning Congress prescribed specific dollar values of specified coins. Act of July 31, 1789, § 18, 1 Stat. 29, 41. Not long after, the President was given authority to prescribe regulations for computing duties on imports where the original cost was exhibited in a depreciated currency of a foreign government. Act of March 2, 1799, § 61, 1 Stat. 627, 673. In 1873 Congress provided for an annual estimate by the Director of the Mint of the full metal value of standard coins of the various nations and a proclamation of the value by the Secretary of the Treasury. Act of March 3, 1873, 17 Stat. 602. That estimate was required to be made quarterly rather than annually by the Act of October 1, 1890, § 52, 26 Stat. 567, 624. Then came the Act of August 27, 1894, § 25, 28 Stat. 509, 552, which retained the provision for the estimate and proclamation of metallic values and gave the Secretary of the Treasury power to order a reliquidation at a different value on a showing that the value of the invoice currency in United States currency was 10 per cent more or less than the proclaimed value. *United States* v. *Whitridge, supra.* The procedure under the latter provision depended on a consular certificate to establish the percentage of depreciation of the currency. T. D. No. 23725, 5 Treas. Dec. 396. There was thus no single source (and none at all in the United States) to which customs officials could look to determine the extent to which foreign currency had depreciated. Moreover, violent fluctuations in foreign exchange rates had occurred after the first World War. It was for those reasons that § 403 (c) was added to the Emergency Tariff Act of 1921, 42 Stat. 9, 17. See S. Rep. No. 16, 67th Cong., 1st Sess., p. 16; H. Rep. No. 79, 67th Cong., 1st Sess., p. 12; *Fry & Friedsam* v. *United States,* 12 Cust. App. 486, 489. And § 403 (c) of the 1921 Act now appears as § 522 (c) of the 1930 Act on whose meaning the present decision turns.

This history makes clear the search which has been made for a measure of the true dollar values of imported merchandise for customs purposes which was accurate (see *Cramer* v. *Arthur,* 102 U. S. 612, 617) and at the same time administratively feasible and efficient. The formula finally selected is dependent on the actual value of the foreign currency in our own money. The rate for the foreign exchange with which the imported goods are purchased is recognized as the measure of value of the foreign currency; the use of that rate reflects values in United States currency which are deemed sufficiently accurate to serve as the measure of the valuation of the goods for purposes of the *ad valorem* tax. * * *.

While the issues in the above-cited case are not the same as those here involved, the finding that the Federal Reserve Bank of New York alone is given discretion in computing the rate applicable under section 522 (c), *supra,* is entitled to the greatest weight.

The case of *Amalgamated Textiles, Ltd.* v. *United States, supra,* involved a question of the conversion of currency under the Tariff

Act of 1930, and especially the correctness of the findings set forth in the proclamation of the Secretary of the Treasury as to the value of pounds sterling under section 522 (a) of that act. In the proclamation under the column headed "Remarks," opposite the value stated for the pound sterling of Great Britain, there appeared the notation: "Obligation to sell gold at legal monetary par suspended, effective Sept. 21, 1931." The court held that such statement should not be understood as contradicting the statement made in the proclamation that gold was the legal standard of Great Britain and declaring the value of the pound sterling in terms of United States money. The court also held that the correctness of the findings set forth in the Secretary's proclamation may not be inquired into by either the collector or the courts and that the collector is bound to accept such findings in computing the duties involved. When that case was decided section 514, here involved, was in full force and effect, and the court, although it did not discuss the point, undoubtedly considered the provisions thereof in arriving at its conclusion.

In the instant case we have the certification of the Federal Reserve bank (plaintiff's exhibit 1) which expressly states that it is certifying to "buying rates."

After examining the record, briefs, statutes, and pertinent authorities upon the subject, we are satisfied that the Federal Reserve Bank of New York in the proper exercise of its knowledge, judgment, and discretion, and within the spirit and meaning of section 522 (c), *supra*, determined a buying rate for the Brazilian milreis on October 7, 1935, which was duly certified by it to the Secretary of the Treasury. That rate was made public by the Secretary to such extent as he deemed necessary and was the rate employed by the collector of customs in the process of liquidating the entry herein. At this point judicial inquiry terminates.

As was so aptly stated by the Supreme Court of the United States in *Barr* v. *United States, supra*, in discussing the extent of judicial review in a kindred case:

\* \* \* The exercise of the Bank's discretionary power under § 522 (c) is in the category of administrative or executive action which this Court held nonreviewable in *Cramer* v. *Arthur, supra*, and in *Hadden* v. *Merritt*, 115 U. S. 25, 27–28. And see *United States* v. *Bush & Co.*, 310 U. S. 371, 380.

Accordingly, the claim of the plaintiff that "an erroneous and an improper" buying rate was used by the collector of customs in liquidating the entry herein is overruled and the decision of the collector is affirmed.

Judgment will be entered accordingly.