## UNITED STATES *v.* WHITRIDGE.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 413.   Argued January 27, 30, 1905.—Decided February 27, 1905.

Under the proviso of § 25 of the act of Congress of August 27, 1898, 28 Stat. 509, 552, the Secretary of the Treasury is authorized, when he has satisfactory evidence that the rupee price of imported goods stated in the invoice does not mean rupees at bullion value, but as a certain fraction of a pound sterling, to order a reliquidation so as to make the value in United States currency correspond with the actual value of the goods.

In determining when the Secretary of the Treasury exceeded his powers under a statute, this court may consider public facts that were known to Congress when enacting the statute and must have been before the Secretary's mind when acting thereunder, even though such facts were not proved on the trial.

THE facts are stated in the opinion.

*Mr. Assistant Attorney General McReynolds,* with whom the *Solicitor General* was on the brief for the United States:

As to the facts and history of this case which arose because of the material difference between the gold value of the silver in a rupee—the current coin of India—and its commercial value see § 25, act of 1894, 28 Stat. 552; table compiled by Director of the Mint, April 1, 1900; § 5, Tariff Adm. Act, 1789, 1 Stat. 29, and acts of Congress prescribing values of foreign coins. 1790, § 40, 1 Stat. 167; 1799, § 61, 1 Stat. 673; 1801, 2 Stat. 121; 1834, 4 Stat. 700; 1842, 5 Stat. 496; 1843,

5 Stat. 625; 1846, 9 Stat. 14; 1873, requiring annual valuation of foreign coins by the Director of the Mint and proclamation of the same by the Secretary of the Treasury; 17 Stat. 602; Rev. Stat., § 3564; 1890, 26 Stat. 567, 624; 1894, 28 Stat. 349, 509, 552; Rev. Stat. § 2903; Customs Reg., 1899, art. 409. The policy of the Government as to *ad valorem* duties is to assess at actual cost or market value and to effect this invoices in currency of the exporting country are required. Acts of 1789, 1 Stat. 41; 1790, 1 Stat. 167; 1799, 1 Stat. 673; 1801, 2 Stat. 121; 1890, 26 Stat. 131.

Reliquidation of any entry may be made within a year after the original·entry. Sec. 21, act of 1874, 18 Stat. 190, Comp. Stat. 1986; § 24, act of 1890, 26 Stat. 140, Comp. Stat. 1987; *Beard* v. *Porter*, 124 U. S. 437, 441; *Neresheimer* v. *United States*, 131 Fed. Rep. 977; § 2652, Rev. Stat. Á collector is merely a subordinate of the Secretary of the Treasury. 21 Op. 203; § 249, Rev. Stat.; *United States* v. *Ballin*, 144 U. S. 1, 10.

As to coinage in India see Act XXIII of 1870, of Indian Government, and Act XX of 1882, making silver legal tender; Act VIII of 1893; Report Director of Mint of 1893, p. 235; of 1900, p. 383; Act XXVI of September 15, 1899, making the sovereign legal tender at rate of 15 rupees. The bullion value of the rupee was greatly affected by the depreciation of silver owing to the closing of the Indian mints. See Lord Herschell's Report of Currency Committee, printed August 18, 1893, by Congress of United States.

Silver rupees since September, 1899, have been in fact only token coins like the silver dollars of the United States, or, in the language of the Financial Statement of India for 1900–1901, "our notes printed on silver, as we may really regard our rupees." Sess. Papers, House of Commons, 1900, vol. 57.

For history of the proviso in § 25, act of 1894, see Cong. Rec., vol. 26, 53d Cong., 2d Sess., 6576.

That part of the amendment which preceded the word "provided" was not new legislation. It in substance expressed the effect of the acts of 1873 and 1890, as expounded

in *Collector* v. *Richards,* 23 Wall. 246; *Cramer* v. *Arthur,* 102 U. S. 612; *Hadden* v. *Merritt,* 115 U. S. 25; *United States* v. *Klingenberg,* 153 U. S. 93. The proviso contained in the amendment was new legislation.

For history of litigation touching the value of the rupee see *United States* v. *Newhall,* 91 Fed. Rep. 525; *S. C.,* 106 Fed. Rep. 75; *United States* v. *Beebe,* 103 Fed. Rep. 785; *S. C.,* 180 U. S. 640; *S. C.,* 117 Fed. Rep. 670; *S. C.,* 122 Fed. Rep. 762.

The action of the Secretary of the Treasury in declaring the value of the rupee of the invoice, when he ordered reliquidation of the entry, in June, 1901, was final and conclusive, and could not be reviewed or the facts upon which the same was based inquired into by appraisers or courts.

Section 25 of the act of 1894 has two important parts: First, the provisions for valuing foreign coins taken from the act of 1873 requiring an annual estimate, as modified by the act of 1890 requiring quarterly estimates; and, second, the proviso relating to reliquidation, which was entirely new legislation. As to the first part see cases cited *supra.* As to the second part see *Muser* v. *Magone,* 155 U. S. 240, 251; *United States* v. *Passavant,* 169 U. S. 16.

Since September 15, 1899, the monetary standard of India has been gold, the standard coin the British sovereign (worth $4.8665) and the rupee, a token coin, current as the one-fifteenth part thereof—$0.324+. The Secretary, therefore, committed no error of which the importers can complain when he reliquidated the entry in question, valuing the rupee at $0.32. He erred when he proclaimed on April, 1900, that India was on a silver standard and the rupee was worth $0.207.

The proviso in § 25, act of 1894, gave the Secretary the right to direct reliquidation of an entry at the exchange value of the money specified in the invoice whenever that was 10 per cent more or less than the metallic value proclaimed at the beginning of the quarter, and such right did not depend on a change in the market value of the metal in the coin.

The construction of the act of 1894 by the lower courts renders it ineffective. A statute should be construed by considering the reasons and spirit of it and the cause for its enactment, and where particular construction would occasion great inconvenience or produce inequality and injustice, that view is to be avoided if another and more reasonable interpretation is present in the statute. Blackstone's Com., vol. 1, p. 61; *Knowlton v. Moore*, 178 U. S. 41, 77.

Both rules justify the construction asked by the Government of the proviso in section 25, act 1894.

The construction contended for by the importers would defeat the beneficial ends above specified and cause great inequality, injustice and loss by reason of past transactions, and possibly still worse consequences from future ones.

Other governments contemplate changes from gold to silver basis. Report Director of Mint, 1904, 99. For rules of construction of statute applicable see *Smythe v. Fiske*, 23 Wall. 374, 380; *Church Holy Trinity v. United States*, 143 U. S. 457; *Platt v. Un. Pac. R. R. Co.*, 99 U. S. 48; 59; *Lau Ow Bew v. United States*, 144 U. S. 47, 59; *Durosseau v. United States*, 6 Cranch, 307, 313; *Heydenfeldt v. Daney Mining Co.*, 93 U. S. 634; *Hawaii v. Mankicki*, 190 U. S. 197, 212; *United States v. 43 Gallons of Whiskey*, 108 U. S. 491; *Georgia R. R. & Banking Co. v. Smith*, 128 U. S. 174, 181.

*Mr. Albert Comstock*, with whom *Mr. William R. Sears, Mr. Aldis B. Browne* and *Mr. Howard T. Walden* were on the brief, for respondents:

As to functions of the proviso in the act of 1894, see Am. & Eng. Ency. of Law, 2d ed., 678; *Savings Bank v. United States*, 19 Wall. 227; *Minis v. United States*, 15 Pet. 423; *United States v. Dixon*, 15 Pet. 141; *De Forrest v. Redfield*, 4 Blatch. 478.

There was, elsewhere in the statutes, a provision on precisely this matter of divergence between bullion and exchange

values of currencies. It covered only depreciations, and the manifest way to accomplish what the Government thinks was intended, would have been to amend it. Section 2903, Rev. Stat.; T. D. 17,107, May 12, 1896; T. D. 17,766, February 3, 1897.

Analysis of the very terms of the proviso shows that the construction for which respondents contend, is the correct one. T. D. 22,747, is manifestly absurd.

Conditions prevailing at and shortly prior to the enactment in question, compel the conclusion that bullion fluctuations, and not those of exchange, were in the minds of the lawmakers.

Section 2903 continued to afford the only means of taking up the fluctuations of exchange. T. D. 15,606, February 8, 1895; T. D. 24,318, 24,531, 1903.

It cannot be contended that the action of the Secretary, because it followed the language of the proviso to section 25, was final and conclusive and cannot be scrutinized even to see what it really was. *The Second Bebee Case*, 117 Fed. Rep. 670; T. D. 22,511, September 26, 1900; T. D. 18,327, September 4, 1897; T. D. 23,059, May 18, 1901.

The general law with reference to the legal effect of the act of an official entirely supports the claim that the Secretary's action is reviewable. *Am. School of Healing* v. *McAnnulty*, 187 U. S. 94; *Robertson* v. *Frank Brothers*, 132 U. S. 17, 24; *United States* v. *Passavant*, 169 U. S. 16; *Muser* v. *Magone*, 155 U. S. 240, 247; *Shepley* v. *Cowan*, 91 U. S. 330, 340; *Morrill* v. *Jones*, 106 U. S. 466; *Merritt* v. *Welsh*, 104 U. S. 694; *Am. Sugar Ref. Co.* v. *United States*, 181 U. S. 610; *Downes* v. *United States*, 187 U. S. 496.

Executive officials have a dangerous tendency to assume power and to exceed their powers. Congress has not favored it, and the courts have repeatedly corrected and rebuked it. *Christy* v. *Unwin*, 3 Per. Dav. 208; *Galpin* v. *Page*, 18 Wall. 350; *Marriott* v. *Brune*, 9 How. 634; *Greeley* v. *Thompson*, 10 How. 225.

The Secretary had no power to repudiate the duly ascertained and proclaimed pure metal value of the rupee, outside the terms of the proviso to section 25.

MR. JUSTICE HOLMES delivered the opinion of the court.

Whitridge, White & Co., the respondents, on June 18, 1900, imported from India certain gunnies, invoiced in rupees. The invoice contained a certificate from the American consul, dated April 19, 1900, that the exchange value of the rupee at that date was thirty-two cents estimated in United States gold dollars. For the purpose of ascertaining the *ad valorem* duties under the act of July 24, 1897, c. 11, 30 Stat. 151, Schedule J., cl. 341, in July, 1900, the collector of the port of Baltimore estimated the value of the merchandise at the date of the consular certificate by converting the invoice value into dollars, taking the rupees at thirty-two cents. The importers entered protest and the collector reliquidated the entry, taking the rupee at 20.7 cents. The Secretary of the Treasury, on June 6, 1901, wrote that satisfactory evidence had been produced to him that the value of the rupee was thirty-two cents at the date of the consul's certificate, and directed a reliquidation at that rate. The collector of the port reliquidated accordingly on June 12, 1901. The importers (respondents) protested, and the matter was submitted to the Board of General Appraisers in New York. Act of June 10, 1890, c. 407, § 14. 26 Stat. 131, 137. The Board found that the exchange value of the rupee at the date of certification was thirty-two cents, but that the metal value was 20.7 cents, as estimated by the Director of the Mint and proclaimed by the Secretary of the Treasury for the quarter year beginning April 1, 1900, ruled that the latter rate should have been taken, and directed a reliquidation on that footing. The collector appealed to the Circuit Court and then to the Circuit Court of Appeals, both of which sustained the Board of Appraisers. 129 Fed. Rep. 33. The United States then obtained a writ of

certiorari from this court. The question is whether the Secretary of the Treasury had power to order reliquidation at the rate of thirty-two cents.

There is, to be sure, a preliminary question as to the conclusiveness of the Secretary's action under the statute. Technically it does not appear that his decision was not based on a finding as to the metal value of the rupee; that is to say, as to the value on April 19, 1900, in fractions of a gold dollar, of the silver contained in the coin. If the decision were based on such a finding we may assume that it would not be open to review. *United States* v. *Klingenberg,* 153 U. S. 93. But the greater part, at least, of the argument was made on a different assumption, which, in view of our conclusion, we shall adopt. We do so the more readily, because upon the public and well known facts it is not to be supposed that the imagined finding as to the value of silver was made, and the policy of the Treasury Department to adopt the exchange value of rupees was well known and publicly declared. It would not be consistent with the honor of the Government to take the exchange value and then to cover itself from correction, if it was wrong, by suggesting that it had gone upon a different ground, when that ground could not have been taken by any one knowing the prices of the time. There is another argument for the conclusiveness of the Secretary's action which is so closely connected with the merits that we shall not separate it from our general discussion of the act.

The power of the Secretary depends on the construction of the act of August 27, 1894, c. 349, § 25. 28 Stat. 509, 552.[1]

---

[1] "That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint, and be proclaimed by the Secretary of the Treasury immediately after the passage of this act and thereafter quarterly on the first day of January, April, July, and October in each year. And the values so proclaimed shall be followed in estimating the value of all foreign merchandise exported to the United States during the quarter for which the value is

It is argued for the respondents that the Secretary must derive his power from the proviso if from anything, that the value dealt with in this section is the same thing throughout, and being declared to be that of the pure metal of the coin in the body of the section, must be the same in the proviso, and that therefore the Secretary is not authorized to order a reliquidation unless it appears to him that the pure metal in the invoice coin was worth ten per cent more or less in American gold than the value proclaimed. This argument is thought to derive some support from the history of legislation and from the history of the times, which latter is thought to show that fluctuations of silver bullion, not fluctuations of exchange values, were what Congress was likely to have had in mind. It is suggested further that the Government reading makes the proviso revolutionize the body of the section and the practice of a hundred years.

On the other side we start with the consideration that to an *ad valorem* tax it must be an object to ascertain the true value of the thing taxed at the time as of which it is taxed, and that the invoice price is referred to only to that end. The history of the statutes shows a series of continually closer approximations to it, and to our mind helps the contention of the Government, not that of the other side. The statutes began by fixing the rates for specified coins absolutely. Then, in 1873, they provided in the language of the first part of § 25, quoted above, for an annual estimate by the Director of the Mint and a proclamation. Act of March 3, 1873, c. 268, 17 Stat. 602. Rev. Stat. § 3564. In 1890 the estimate was required to be quarterly, instead of for the year. Act of October 1, 1890,

---

proclaimed, and the date of the consular certification of any invoice shall, for the purposes of this section, be considered the date of exportation: *Provided*, That the Secretary of the Treasury may order the reliquidation of any entry at a different value, whenever satisfactory evidence shall be produced to him showing that the value in United States currency of the foreign money specified in the invoice was, at the date of certification, at least ten per centum more or less than the value proclaimed during the quarter in which the consular certification occurred."

c. 1244, § 52.   26 Stat. 567, 624.   Finally, on August 27, 1894, the statute received its present form, with the proviso from which the Secretary derives his clearest grant of power.   The general purpose of this proviso undeniably is to secure a closer approximation still.   In construing it we must bear this obvious purpose in mind.   While no doubt the grammatical and logical scope of a proviso is confined to the subject matter of the principal clause, we cannot forget that in practice no such limit is observed, and when, as here, we are dealing with an addition made in new circumstances to a form of words adopted many years before, the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down.   *Georgia Railroad & Banking Co.* v. *Smith,* 128 U. S. 174, 181.

If the proviso were a separate subsequent act we should note that the case in which the Secretary is authorized to order a reliquidation is not confined in terms to a difference in the value of standard coins in circulation, but exists whenever there is such a difference in the value of the foreign money specified in the invoice.   The invoice is required to be made out in the currency of the country of export or the currency actually paid, which may not be coin at all.   Act of June 10, 1890, c. 407, § 2.   26 Stat. 131.   It is true that the difference referred to in the proviso is a difference from the proclaimed value, and that the proclaimed value has reference to standard coins.   Whether, in view of this fact and of Rev. Stat. § 2903, the words would cover a difference in value between paper expressed in terms of current coin and current coin, if paper were the currency shown by the invoice or the consul's certificate to be the currency to which the invoice referred, need not be considered.   That question did not arise in *Cramer* v. *Arthur,* 102 U. S. 612.   However that may be, suppose that the currency mentioned in the invoice, although coined, was a token currency having by legislative fiat the value of a fraction of some current coin of universal worth, but itself having no such worth derived from the metal it contained.   Such a

token might vary in value much below or above the fraction of the coin by which it purported to be measured. Suppose that the value of the latter coin only had been proclaimed. It would be going far to say that the Secretary could not order a reliquidation upon a variance of more than ten per cent between the value of the token currency in the invoice and the proclaimed value of the governing coin.

The case last put is the case at bar, except that it is not admitted that the rupee was technically a mere token, and that the value of the rupee itself had been proclaimed, subject to a note—"value of the rupee to be determined by consular certificate." At that time, although it was not noted until a little later in the year by the Director of the Mint, India was on a gold basis. As the rupee had a legally fixed ratio to another coin also valued by the Director, the gold pound, it is plain that the value of the rupee as so much silver and its value as a fraction of a pound might fall apart and yet both be given by the Director's tables. It would be giving a very literal construction to the body of § 25 to say that it forbade the Secretary to take the fraction of the pound rather than the silver bullion as the measure of the value of goods, if the former represented the unit of actual cost. But, supposing that the fraction of the pound was the unit of cost, it seems to us that at least under the proviso, if not under the body of the section, the Secretary could order a reliquidation on the basis of the units actually used. It would be simply a correction in conformity with the truth and the actual meaning of the words of the invoice. The other argument for the conclusiveness of the Secretary's action, to which we referred at the outset, was that, for all that appears, this may have been what happened. The gold which the rupee represents is one shilling and four pence, or about thirty-two cents. But, as in this case the exchange value and the value as a fraction of a pound were the same, it does not matter to our decision whether we say that in such circumstances the action of the Secretary was conclusive or say that it was right.

We have shown that in our opinion the proviso, if not the body of § 25, would have warranted the action of the Secretary. if it had been a later independent statute.   We are of opinion that it is not to be construed differently because of its form. In addition to the considerations which we have mentioned, we are confirmed in our view by the facts which were known at the time.   It is true that the most conspicuous recent event was the fluctuation in the value of silver.   But the movement of silver, especially after the repeal of the Sherman Act, on November 1, 1893, 28 Stat. 4, had been downward, and the proviso contemplated at least equally a possible rise in the foreign money with which it dealt.   On the other hand there was before Congress the Herschell report on the coinage of silver in India, of which six thousand copies had been ordered to be printed by a resolve of the Senate, concurred in by the House, 28 Stat. App. p. 5, and which had been printed in 1893.   This report recommended the closing of the mints against the free coinage of silver, and predicted as a consequence the divergence between the intrinsic value of the rupee and the value of its ratio to the pound as fixed, taken hypothetically as one shilling and four pence.   It contemplated even a raising of the ratio as possible.   The report was followed by the closing of the mints in the same year, and the result predicted came to pass.   However small may have been the imports from India in 1894, the fact predicted by the Herschell report was one of the most striking incidents in the recent financial history of the world, and we cannot suppose that it was not considered when the proviso was passed. Before the date of this export gold was adopted as the standard, and the ratio of the rupee fixed at fifteen to one, or one shilling and four pence, in 1899.   The exchange value did not change very much, remaining at near the conventional ratio, but the decline in bullion made the divergence referred to more marked.   It was objected that some of the facts which we have mentioned were not proved in the case, but they are public facts, and when we are asked to declare that the Secretary

exceeded his power we have to consider what might have been before his mind.

As we have said, it would be only by a very literal construction of the earlier part of § 25, that the collectors would be bound to estimate the value of a cargo invoiced in rupees by the bullion of the rupee when in the invoice rupee meant a certain fraction of a pound. But, however that may be, we are of opinion that when the Secretary has satisfactory evidence of that state of facts, under the proviso he is authorized to order a reliquidation in order to make the value in United States currency correspond with the actual value of the goods. It is not necessary to consider any wider problems as to the power of the Secretary. We confine our decision to the particular case.

*Decree reversed.*