ALVAREZ & PASCUAL, INC., Plaintiff and Appellee, v. SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellant.

No. 12466. Decided February 2, 1962.

464

*J. B. Fernández Badillo, Secretary of Justice, Arturo Estrella,*
*and J. C. Santiago Matos, Assistant Secretaries of Justice,*
for appellant. *Omar Cancio Sifre, Diego Guerrero Noble,*
and *R. García Cintrón* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief
Judge of Division, Mr. Justice Blanco Lugo and Mr. Justice
Rigau.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The plaintiff company is engaged mainly in the importa-
tion and sale of jewelry, with exclusive representation in
this market of a number of American firms. Plaintiff's ac-
tivities as commission agent and representative of these firms
are involved in this suit. With respect to these activities, the
Secretary of the Treasury imposed an administrative penalty
on plaintiff pursuant to the provisions of the last paragraph
of § 65 of the Internal Revenue Law, then in force, Act No.
85 of August 20, 1925, as amended, 13 L.P.R.A. § 1221.
Plaintiff appealed to the superior court, and obtained judg-
ment. The Secretary of the Treasury appeals to us to review
that judgment.

In its capacity as commission agent and representative
of outside firms, plaintiff takes orders from merchants in
Puerto Rico and sends those orders to firms it represents in

the United States. They send the articles sold, directly to the merchants or buyers in Puerto Rico and they pay plaintiff a commission on the orders delivered.

It appears from the evidence that in the course of its work the Treasury Department noticed a series of irregularities concerning the payment of taxes on the part of several merchants who had introduced into Puerto Rico taxable jewelry ordered through plaintiff.

For example, Mr. Ulises Laboy (former Director of the Excise Tax Bureau of the Treasury Department at the time of the case at bar, but who at the time he testified was engaged in his own as a private citizen) stated at the trial the following:

"Well, when we checked the orders filed by the taxpayers of Puerto Rico with Alvarez & Pascual we noticed that the amount of the order varied from the amount received according to the commercial invoice presented by the importers..." Tr. Ev. 64–65.

Mr. Laboy also stated that "upon the Bureau's intervening there was an order of FOUR THOUSAND odd dollars, and yet to pay that bill, an invoice of ONE HUNDRED odd dollars was presented." Tr. Ev. 63. (From the context of Mr. Laboy's statement it is inferred that when he says "to pay that bill" he refers to the invoice produced for the purposes of the payment of the taxes, which as it is known, are paid on a percentage basis of the value of the articles purchased.)

The evidence showed, and it was so found by the trial court, which we quote, that in some cases "the merchandise delivered and introduced *was billed piecemeal*, and that the local importer paid the tax *only on part* of the merchandise." (Italics ours.) The finding of fact of the superior court continues thus:

"In the record of the case there is an order on printed paper of plaintiff, dated September 12, 1951 having 8 items, 4 of which are marked with a number 1 within a circle and the other four

are marked with a number 2, and a note which reads: *Make two orders for 1 and 2 and write letter that both be delivered together but billed separately.*

"There is also a letter from the firm Fernando del Toro, of Mayagüez, importers of jewelry, dated July 30, 1951, addressed to plaintiff which reads as follows:

"We enclose with pleasure a check for the amount of $40.50 which corresponds to our pending bill.

"Besides the order for 'Silkay' chains which we personally made in your office, we would appreciate that you order for us the following, including it with the previous order, provided the others have not yet been sent. .

| No. 3 | 6 doz. chains 18″ | 14K |
| No. 5 | 6 doz. chains 18″ | 14K |
| No. 6 | 3 doz. chains 18″ | 14K |

"On this and the previous order, *you may point out to the firm that they may bill us for taxing purposes 2 doz. No. 3, 1 doz. No. 5 and 1 doz. No. 6.*"    (Italics ours.)

As we stated at the beginning when the Treasury Department noticed several irregularities in relation to the payment of excise taxes on jewelry which had been ordered through plaintiff, it requested the latter to furnish the commercial invoices in order to examine them, pursuant to the provisions of § 65 cited above of the Internal Revenue Law in effect at that time, § 65 of which we shall examine shortly.[1]

By letter of *June 10, 1954*, the Secretary of the Treasury, Mr. Descartes, requested plaintiff to bring to his office the authentic copies of the commercial invoices corresponding to a series of orders made in Puerto Rico through plaintiff and delivered by the firms in the United States it represents. The Secretary attached to his letter a list of the purchase orders

---

[1] That Internal Revenue Law of 1925 was repealed and substituted by the Excise Act of Puerto Rico, Act No. 2 of January 20, 1956, 13 L.P.R.A. § 4001 *et seq.* The context of § 65 applicable in this case is the one provided by Act No. 139 of April 28, 1949, and which is contained in 13 L.P.R.A. § 1221.

the invoices of which he wanted and warned it in the same letter that its failure to send the documents requested, would entail the penalties provided by the Internal Revenue Law.

On July 30, 1954, the Secretary granted plaintiff an extension of thirty days to present the invoices in question. On *August 2, 1954* the plaintiff, addressed the Secretary through counsel informing him that it could not present the invoices. By letter of *February 18, 1955*, the Secretary notified plaintiff the imposition of a fine of $50 for each commercial invoice requested and not presented. A reconsideration having been requested by plaintiff, the Secretary, now Mr. Rafael Picó, by letter of *October 13, 1955*, confirmed the imposition of the penalties. In his report to plaintiff the Secretary of the Treasury stated:

"Despite your arguments this Department is convinced that the firm Alvarez & Pascual has violated § 65 upon failing to present the documents requested, and thus preventing the criminal prosecution of those persons who evaded the payment of excise taxes on articles introduced in these cases."

Plaintiff filed its complaint in the superior court dated November 14, 1955 and on May 31, 1956 it filed an amended complaint. Plaintiff's position is as follows:

(1) "It considers that it has no legal duty whatsoever to keep and furnish the Treasury Department with the commercial invoices referred to in § 65, because when it acts as commission agent or representative its participation in the commercial transaction is limited to receiving orders for its principals, and consequently, its obligation is limited ... to keeping the record requested by the third paragraph of said section of the law ..." and

(2) "Plaintiff alleges in the alternative that if § 65 of the Internal Revenue Law were construed in the sense that it imposes upon plaintiff the obligation of having and keeping the copies of the invoices in relation to which the administrative penalties have been imposed in this case, said section, in this aspect, would be void and unconstitutional for it violates the due

process of law clause ... because said § 65 which is of a penal character, is couched in vague, uncertain and indefinite terms." Paragraphs 8 and 9 of the amended complaint.

The trial court found the first of these two allegations to be correct, and on this ground it sustained the complaint. On appeal, the Secretary of the Treasury points out that the trial court committed error of law in deciding that the administrative penalties were inappropriate and in concluding that plaintiff did not violate § 65 of the Internal Revenue Law. Thus, the question before us is which is the correct interpretation of the statute.

We shall turn to the afore-mentioned § 65. It is a lengthy section and being a tax law, it is not exactly a page from Azorín, smooth and crystal-clear. Tax laws are not written to give spiritual delight although an adequately organized civilization may devote part of its energy in that pursuit. For the sake of objectivity and exactitude let us examine § 65 *in toto:*

"*Every* manufacturer, dealer, *representative, commission agent, agent,* or any other person carrying out, *for his own account or for the account of those whom he is representing,* operations of importation, purchase, sale, or transfer, or who is using merchandise of articles subject to excises or internal-revenue license taxes, according to this subtitle, *shall be obliged to keep in his files,* reasonably organized, in the judgment of the Secretary of the Treasury of Puerto Rico, and for a period of not less than five (5) years, counting from the day the payment of the tax was effected or should have been effected, *the commercial invoices,* accounting books, notes, and any other documents *related to the introduction, purchase,* manufacture, *sale,* use, or transfer of said articles.

"*Provided,* That such manufacturer, dealer, representative, *commission agent, agent, or any other person affected by this* section, shall, upon the request of officers of the Department of the Treasury, be obliged to present *the said commercial invoices,* accounting books, and any other documents related to the introduction, purchase, sale, transfer, use, or alienation in any other

way of the above-mentioned articles; and said person shall like-wise be obliged to permit the said officers to examine them and to take note of any entry made therein, without objecting to the marking or signing on the face or back of said documents, books, or notes, by means of any such conventional sign, figure, or mark as said officials may adopt to identify as authentic before any administrative or judicial body, should it become necessary, the accounting folios or any other documents audited by them in the course of any official investigation; and to furnish for official use, if necessary in the judgment of the Secretary of the Treasury of Puerto Rico, *the said* original *commercial invoices,* or certified copies thereof, as well as the orders received from their clients for the importation, purchase, sale, use, or transfer of articles taxable under this subtitle.

"*Provided, further,* That dealers, importers, or manufacturers, of taxable merchandise shall be obliged to require from the persons from whom they purchase the articles, authentic invoices reflecting the cost charged for each taxable article; and in the case of commission agents, representatives, or agents receiving orders for those whom they represent, for merchandise or articles to be consigned to themselves, or to their clients, or to the order of the shippers, they shall be obliged to keep a record in the manner prescribed by the Secretary of the Treasury of Puerto Rico, in which shall be set forth names and addresses of the clients, the date of the order, the number of the order of the client, if any, the quantity of merchandise ordered, and the cost at the point of origin thereof.

"*Provided, likewise,* That any consignee or owner of any such merchandise or article imported into Puerto Rico as in the judgment of the Secretary of the Treasury has not been identified by his internal-revenue agents, shall be obliged to present the proper commercial invoices, if required to do so by the officers of the Department of the Treasury, and to permit likewise the examination of his accounting books or of any other register, notebook, or record whereon said commercial invoices may have been recorded or listed.

"The person affected by these provisions, who present to the Secretary of the Treasury or to his authorized officers, invoices or documents in code form or in signs or symbols, without a transcribed description of the articles or merchandise object of the importation, manufacture, sale, use, or transfer, shall be

obliged to furnish said description in ordinary language or, at the option of the Secretary of the Treasury of Puerto Rico, to present to the internal-revenue agents the authentic catalog or document which originated the use of such code or symbols.

"*Provided, finally,* That for the purposes of this section, *any person who receives orders for merchandise taxable* under this subtitle, *for the account of those whom he represents in any form, has engaged in selling operations, and shall, therefore, be obliged to comply with the foregoing provisions.*

"Any violation of the provisions of this section shall constitute a misdemeanor, punishable by a fine of not to exceed two hundred (200) dollars, or by imprisonment in jail for a term of not more than thirty (30) days, or by both penalties, in the discretion of the court; *Provided,* That the Secretary of the Treasury may, in his discretion, punish said violations through the levy of *an administrative fine* which shall fluctuate between five (5), and two hundred (200) dollars in each case." 13 L.P.R.A. § 1221. (Italics ours.)

██ Plaintiff alleges that the additional obligation to keep a record as provided by the third paragraph of this section, relieved it of the obligation to save and produce the invoices; an obligation which is explicitly imposed by the first, second, and penultimate paragraphs of said statutory provision. Plaintiff is wrong. This section, as any other, has to be read and considered as a whole, not fractionally, and in order to find its meaning, it has to be read—also like any other one—in the light of its purpose.[2] The most superficial consideration of the Internal Revenue Law as a legislative piece and of the relationship existing between its § 65 and the rest of the law suffices to show that the purpose of said section is to provide the means to make that statute effective and to avoid fraud. To interpret § 65 as plaintiff seeks—relieving it from the obligation to keep and present the com-

---

[2] *United States* v. *Whitridge*, 197 U.S. 135, 143; 49 L. Ed. 696, 698 (Holmes, 1905); Llewellyn, *Remarks on the Theory of Appellate Decision*, 3 Vand. L. Rev. 395, 400 (1950); Hellerstein, State and Local Taxation, at p. 35 (1952).

mercial invoices—would defeat the purpose thereof. That is precisely what happened in this case: in the absence of the invoices the Secretary of the Treasury could not bring to the courts the importers who in his opinion, had illegally evaded the excise taxes. See the letter by the Secretary Mr. Picó above-mentioned in this opinion.

We are told that the act in question is a penal law and therefore that we should interpret it restrictively. This is incorrect. It concerns an excise tax law; the Internal Revenue Law. Naturally, a law which imposes taxes must contain sanctions; otherwise, it would not do much good. That problem has long since been decided by the Supreme Court of the United States. In *Smythe* v. *Fisk*,[3] it was stated that revenue laws should be construed liberally in order to carry out the purpose of their enactment and that their penal provisions are not penal in the sense that requires a rigidly strict construction. Besides, the courts refuse to interpret laws on the basis of maxims. The courts may not have a position *a priori* as to the questions to be decided, but rather it is their duty to consider each controversy on its own merits. To what we said in *Millán* v. *Caribe Motors Corp.*, 83 P.R.R. 474 (1961) and in *Banco de Ponce* v. *Secretary of the Treasury*, 81 P.R.R. 432, 438 (1959), concerning the already discredited practice of defeating the purposes of the statutes by giving undue weight to the rules of interpretation, we now add the opinion of Professor De Castro,[4] cited with approval by Castán: "Juridical rules do not have in themselves juridical value, much less the validity of a juridical source; they are technical expressions or pedagogical recourses, and in most cases to cloak the indolence of juridical thought, and a sign of decadence of the science of law."[5]

---

[3] 90 U.S. 374, 380; 23 L. Ed. 47, 49 (1874).

[4] I *Derecho Civil de España* 433 (2d ed. 1949).

[5] I-1 Castán, *Derecho Civil Español, Común y Foral* 330 (Madrid, 9th ed. 1955).

■■ The truth is there is no rule of legal hermeneutics which prevents judges from using common sense in construing laws. *Roschen* v. *Ward*.[6]  Where a statute requires interpretation we cannot assume the position of the King who while presiding at the trial (in Alice in Wonderland) upon examining a paper said to Alice "If there's no meaning in it, that saves a world of trouble, you know, as we needn't try to find any."  Legislative Acts presumably have meaning and purpose and we must try to find them.[7]

■ After having closely examined the transcript of evidence we are certain that the plaintiff knew the meaning and purpose of § 65.[8]  The dialogues between the Secretary's counsel and the Vice-president and Treasurer of the plaintiff company, at the trial and between that same counsel and Mr. Ulises Laboy confirm the fact that plaintiff attempted and— succeeded—to prevent the Secretary from obtaining and examining the invoices in question.  Tr. Ev. 26 and 60–61. We have also considered the arguments presented by plaintiff in its brief, but they do not convince us that it is correct. Plaintiff invites us to interpret the statute in an artificial way, word by word disregarding the substance thereof. We can not do so.  The case of *United States* v. *Cardiff*[9] on which plaintiff lays stress, is clearly inapplicable.  In that case, the head of an enterprise was accused of violating a statute in refusing to permit the entry and inspection of his factory by government agents.  On appeal, the judgment was reversed because the law itself, under which Cardiff was accused, expressly provided that before inspectors could enter factories, they had to *request and obtain permission* from its

---

[6] 279 U.S. 337, 339 (Holmes, 1929) ; 73 L. Ed. 722, 728.  See also Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 *et seq.* (1947).

[7] Frankfurter, *Ibid.* at pp. 533–534.

[8] Of course, ignorance of the law does not excuse from compliance therewith.  Section 2 of the Civil Code, 31 L.P.R.A. § 2.

[9] 344 U.S. 174; 97 L. Ed. 200 (1952).

owners or operators. In that case, when the inspectors re-- quested permission, it was refused. In the case at bar, § 65 does not leave to the discretion of the commission agents the keeping and presenting the invoices at the request of the Secretary of the Treasury. Our statute clearly provides that "Every...representative, commission agent, agent...shall be obliged to keep ... for a period of not less than five years ... the commercial invoices..." Section 65 does not provide that the Secretary request and obtain permission to require the invoices.

For the foregoing reasons the judgment of the Superior Court, San Juan Part, rendered in this case on April 5, 1957 will be reversed and the administrative penalties imposed by the Secretary of the Treasury shall be sustained.

