291 So.2d 82 (1973)
CITY OF JACKSONVILLE BEACH et al., Appellants,
v.
H.S. ALBURY, As Tax Collector of City of Jacksonville, and City of Jacksonville, a Consolidated Municipality of the State of Florida, Appellees.
No. S-448.
District Court of Appeal of Florida, First District.
November 8, 1973.
*83 Stephen Stratford, Oliver C. Ball, Joseph M. Glickstein, Jr., and M.S. Dunay, Jacksonville, for appellants.
T. Edward Austin, Jr., Jacksonville, for appellees.
WIGGINTON, Judge.
Plaintiffs have appealed an adverse declaratory judgment rendered in a suit brought by them against the City of Jacksonville, a municipal corporation. The judgment sought to be reviewed interprets the constitutionally authorized charter act which created the City of Jacksonville as a consolidated government whose territorial limits and jurisdiction embrace the entire former County of Duval including all municipal corporations located therein.
Appellants, plaintiffs in the trial court, formerly constituted four of the five incorporated municipalities situated in Duval County, the fifth municipality being the former core City of Jacksonville. The two primary issues raised by the pleadings filed in the cause require a determination of whether appellants are lawfully empowered to levy and collect occupational license taxes from those engaged in businesses and professions within their territorial limits, and whether as corporate legal entities they are entitled to receive and use revenues allocable from state and federal sources to the various incorporated municipalities of this state. The answer to these questions depends upon a determination of whether appellants retain and continue to possess essentially the same corporate structures, powers, privileges, obligations, and immunities under the charter act creating the consolidated government of the City of Jacksonville as they possessed prior to consolidation. It is appellants' position that although the charter act creating the City of Jacksonville has the legal effect of abolishing them as municipal corporations in the traditional and accepted meaning of that term, nevertheless they continue to exist as corporate governmental entities lawfully authorized to exercise the identical municipal powers, privileges, obligations, and immunities conferred upon them under the legislative acts by which they were created and are therefore empowered to exercise and enjoy the same rights, powers, and privileges which they exercised as duly constituted municipal corporations prior to consolidation. On the contrary, appellees, defendants in the trial court, contend that the charter act creating the consolidated City of Jacksonville converted each of appellant-municipal corporations to subordinate administrative entities with strictly limited powers and completely subservient to the governing body of the City of Jacksonville.
*84 In 1933 the Legislature of Florida adopted a joint resolution proposing an amendment to Article VIII, Section 9, F.S.A., of the constitution of this state, the effect of which was to authorize the Legislature to establish a municipal corporation to be known as the City of Jacksonville. The foregoing resolution was consistent with Article VIII, Section 8, F.S.A., of the constitution, which empowers the Legislature to establish and to abolish municipalities and to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time.
The constitutional amendment adopted pursuant to the 1933 joint resolution of the Legislature provides in amended Article VIII, Section 9, F.S.A., as follows:
"Section 9... . The Legislature shall have power to establish, alter or abolish, a municipal corporation to be known as the City of Jacksonville, extending territorially throughout the present limits of Duval County, in the place of any or all county, district, municipal and local governments, boards, bodies and officers, constitutional or statutory, legislative, executive, judicial or administrative, and shall prescribe the jurisdiction, powers, duties and functions of such municipal corporation, its legislative, executive, judicial and administrative departments and its boards, bodies and officers; to divide the territory included in such municipality into subordinate districts, and to prescribe a just and reasonable system of taxation for such municipality and districts; and to fix the liability of such municipality and districts... . Such municipality may exercise all the powers of a municipal corporation and shall also be recognized as one of the legal political divisions of the State with the duties and obligations of a county and shall be entitled to all the powers, rights and privileges, including representation in the State Legislature, which would accrue to it if it were a county... ."
The foregoing amendment was approved in the general election held in 1934.
Prior to 1967 each of the appellants herein was created by special acts adopted by the Legislature in accordance with the constitution as it then existed.
As a result of a plan for the establishment of a consolidated government to consist of the governments of Duval County and all corporate municipalities located therein, the 1967 session of the State Legislature adopted a charter act creating the present City of Jacksonville by the enactment of Chapter 67-1320, Laws of Florida, 1967. Within four days after this act cleared and received the approval of both houses of the Legislature, another statute was introduced in the Legislature which amended in a number of material respects the original charter act which had just received legislative approval. The amendatory act was also approved by the Legislature and is designated as Chapter 67-1535, Laws of Florida, 1967. Both the original and the amendatory acts, which together comprised the charter of the City of Jacksonville, were subject to a referendum election held in Duval County and were approved on August 8, 1967.
In order to arrive at the legislative intent manifest in the two separate acts comprising the charter of the City of Jacksonville, the relevant provisions of each act must be examined. The original act designated as Chapter 67-1320 contains the following pertinent provisions, to wit:
"ARTICLE 1
"ONE GOVERNMENT
"Section 1.01. Creation of a Single Government. The county government of Duval County, the city of Jacksonville, the city of Jacksonville Beach, the city of Atlantic Beach, the city of Neptune Beach and the town of Baldwin, ... (all of which are herein called the `former governments'), ... are *85 hereby consolidated into a single body politic and corporate pursuant to the power granted by section 9 of article VIII of the Constitution of the state of Florida. The name of the new consolidated government shall be the city of Jacksonville (herein called the `consolidated government'). The consolidated government shall, without other transfer, succeed to and possess all the properties (of whatever nature), rights, capacities, privileges, powers, franchises and immunities, and be subject to all of the liabilities, obligations and duties of the former governments from and after the effective date of this charter... .
"Section 1.02. Territory of Consolidated Government. The consolidated government shall have jurisdiction, and extend territorially throughout the present limits of Duval County.
"ARTICLE 2
"General And Urban Service Districts
"Section 2.01. Services Districts and Their Areas. The territory of the consolidated government shall be divided into a general services district and two urban services districts. The general services district shall consist of the total area within the consolidated government, which is the total area of Duval County. One urban services district shall initially consist of the area which immediately prior to the effective date of this charter was included in the corporate limits of the former city of Jacksonville. The second urban services district shall initially consist of the areas which immediately prior to the effective date of this charter were included in the corporate limits of the city of Jacksonville Beach, the city of Atlantic Beach, and the city of Neptune Beach.
* * * * * *
"ARTICLE 3
"POWERS OF THE CONSOLIDATED
GOVERNMENT
"Section 3.01. General Powers. The consolidated government shall have: (1) any and all powers which cities are, or may hereafter be, authorized or required to exercise under the Constitution or the general laws of the state of Florida, ... (2) any and all powers which counties are, or may hereafter be, authorized or required to exercise under the Constitution or the general laws of the state of Florida, ... (3) any and all powers which any of the former governments possessed immediately prior to the effective date of this charter... .
"Section 3.02. Specific Powers. Without limiting the generality of the provisions of section 3.01 above, the consolidated government shall have power:
* * * * * *
"2. To levy and collect taxes upon all taxable privileges and to license and regulate such privileges and privileged occupations except as prohibited by law.
* * * * * *
"Section 3.03. Construction. The powers of the consolidated government shall be construed liberally in favor of the consolidated government. The specific mention, or failure to mention, particular powers in this charter shall not be construed as limiting in any way the general power of the consolidated government as stated in this article. It is the intention hereof to grant to the consolidated government full power and right to exercise all governmental authority necessary for the effective operation and conduct of the government of the area and all of the affairs of the consolidated government.
* * * * * *
"ARTICLE 23
"MISCELLANEOUS PROVISIONS
* * * * * *
"Section 23.03. Consolidated Government to Constitute a County and a Municipality. For all purposes of general law, the consolidated government shall *86 constitute a county and a municipality. If the general laws applicable to counties and municipalities conflict in any respect, the council may elect and determine whether the consolidated government shall be considered a county or a municipality for the purpose of such conflicting laws and, in making such election, may determine in any case that the urban services districts shall be considered to be municipalities and the general services district considered to be a county.
* * * * * *
"Section 23.07. Intent of Charter and Separability of Provisions. The people residing within Duval County declare and determine that by the adoption of this charter it is their intent to exercise to the full extent possible the constitutional power granted by section 9 of article VIII of the Constitution of the state of Florida and, in so doing, to consolidate all of the governmental and corporate functions of the county of Duval, the city of Jacksonville, the city of Atlantic Beach, the city of Jacksonville Beach, the city of Neptune Beach, and the town of Baldwin, ... so that, in the interest of modern, efficient and economical government, the same shall constitute one governmental entity... .
"ARTICLE 24
"DEFINITIONS
"Section 24.01. Definitions. For all purposes of this charter the following terms shall have the following meanings:
* * * * * *
"(5) `Former governments' shall mean the former county government of Duval County, the former city of Jacksonville, the former city of Jacksonville Beach, the former city of Atlantic Beach, the former city of Neptune Beach, the former Town of Baldwin, ... .
"(6) `General services district' shall mean the total area of Duval County.
* * * * * *
"(10) `Urban services districts' shall mean the two districts initially described in section 2.01 of this charter as they may be expanded or consolidated pursuant to sections 2.02 and 2.03 of this charter."
From the foregoing provisions, it is palpably clear that the Legislature intended to consolidate the former governments of Duval County and all municipal corporations existing therein into a single body politic and corporate to be known as the City of Jacksonville. The consolidated government so created succeeded to the ownership of all property of whatever nature, rights, powers, franchises and immunities of the former governments, subject only to the outstanding liabilities and obligations theretofore incurred by such governments. For the purpose of administration, the consolidated government was divided into a general service district, consisting of the total area of what was formerly Duval County, and two urban service districts. One urban service district comprised the area which immediately prior to consolidation included only the corporate limits of the former City of Jacksonville. The second urban service district consisted of the areas comprising the former municipalities of Jacksonville Beach, Atlantic Beach, and Neptune Beach, as each of them existed immediately prior to consolidation. The former municipality of Baldwin, one of the appellants herein, was not specifically included in the general or either of the urban service districts, so presumably fell within the former. The consolidated government was vested with all powers possessed by cities and counties of the state under general law together with all powers which any of the former consolidated governments possessed immediately prior to the effective date of the charter. Such powers included the right to levy and collect taxes upon all taxable privileges and to license those engaged in occupations except *87 as may be prohibited by law. For the purpose of general law, the consolidated government was constituted as both a county and a municipality empowered to exercise all rights and privileges granted to either form of government by the laws of this state. Article 23 of the charter declares its intent to consolidate all of the governmental and corporate functions of the county of Duval and the cities of Jacksonville, Atlantic Beach, Jacksonville Beach, Neptune Beach, and Baldwin, so that, in the interest of modern, efficient, and economical government, the same shall constitute one governmental entity.
By the terms of the charter act the corporate municipal structures of each of appellants were effectively abolished. The territorial area of appellants became urban service districts whose sole function was to act in accordance with such power and authority as might be delegated to them by the City of Jacksonville for convenience in administering municipal functions. It is clear that under Chapter 67-1320 first enacted by the Legislature, the consolidated government of the City of Jacksonville was empowered to levy one occupational license tax against all businesses and professions in the county in the exercise of its county function, and to levy a second occupational license tax against all businesses and professions operating within the urban service districts of the city in the exercise of its municipal function. Nowhere in the act do we find any authority for the urban service districts to levy or collect occupational license taxes as may be authorized and permitted by the consolidated government. If no other action had been taken by the Legislature by way of amendment to the foregoing act, we would be impelled to affirm the finding by the trial court as recited in the judgment appealed herein when it held:
"It is manifest that the Legislature clearly intended that the City of Jacksonville swallow up the Beaches and Baldwin, and fully govern the entire county. By way of lagniappe, the Beaches and Baldwin were left their names and their boards, bodies and officers, but those were to exercise no power and perform no function except as may be delegated by the city to those urban service districts for convenience in administration."
It was upon the foregoing finding that the trial court concluded that only the consolidated government of the City of Jacksonville was entitled to levy occupational license taxes against businesses and professions operating both in the county at large and in the urban service districts comprising the appellants herein, and that appellants possessed no corollary power to levy such taxes against the businesses and professions operating within their territorial limits.
The 1967 Legislature did not stop with the enactment of Chapter 67-1320 as a final plan of consolidating the governments of Jacksonville and Duval County. In obvious deference to the demands of those citizens residing in the municipalities comprising the Beaches and Baldwin, the Legislature elected to amend the original plan of consolidation by granting to those municipalities some degree of autonomy and self-determination. There was thereupon promptly introduced in the Legislature, within four days after the original charter statute was adopted and sent to the Governor for his approval, a new statute designated as Chapter 67-1535, Laws of Florida, 1967. The new statute amended the one previously adopted as Chapter 67-1320, and both statutes together now comprise the charter act of the consolidated government of the City of Jacksonville. The pertinent provisions of the amendatory act insofar as they relate to the issues before us for consideration are as follows:
"Section 2A.01. Statement of Intent. Although the former governments of the cities of Jacksonville Beach, Atlantic Beach, and Neptune Beach, and the town of Baldwin have been consolidated into the consolidated government it is the intent *88 and purpose of this charter to preserve for the people residing in the second, third, fourth and fifth urban services districts the same local governmental structure, boards, bodies, officers and laws which existed in those areas prior to the effective date of this charter.
"Section 2A.02. Boards, Bodies and Officers. Notwithstanding any other provision of this charter, the second, third, fourth and fifth urban services districts shall each have the same boards, bodies and officers as the former government which occupied the area of such urban services district immediately prior to the effective date of this charter. The persons who were officers and members of boards and bodies of former governments in the second, third, fourth and fifth urban services districts immediately prior to the effective date of this charter shall occupy the same positions in those urban services districts, and shall be entitled to the same compensation therefor. All such boards, bodies and officers of the second, third, fourth and fifth urban services districts shall continue to be elected at the times, in the manner, and for the terms which were provided under the respective municipal charters of the former governments in those urban services districts. All such boards, bodies and officers shall continue to have the same powers and duties which they had under the respective municipal charters of the former governments.
"Section 2A.03. Powers and Duties of Second, Third, Fourth and Fifth Urban Services Districts. Notwithstanding any other provisions of this charter, the second, third, fourth and fifth urban services districts shall each have such powers and duties, and only such powers and duties, as the former government which occupied the area of such urban services districts had immediately prior to the effective date of this charter, and such additional powers and duties as are hereby granted to or imposed upon municipalities under the Constitution or the general laws of the State of Florida.
"Section 2A.04. Names. The second urban services district shall be known as, and entitled to use the name of the city of Jacksonville Beach. The third urban services district shall be known as, and entitled to use the name of, the city of Atlantic Beach. The fourth urban services district shall be known as, and entitled to use the name of, the city of Neptune Beach. The fifth urban services district shall be known as, and entitled to use the name of the town of Baldwin.
"Section 2A.05. Applicability of Certain Laws. All special and general laws which applied to the former governments which occupied the areas of the second, third, fourth and fifth urban services districts immediately prior to the effective date of this charter shall apply to the government, boards, bodies and officers of the second, third, fourth and fifth urban services districts, as if the municipal charters of those former governments were still in full force and effect.
"Section 2A.06. Property. The second, third, fourth and fifth urban services districts shall each be entitled to the use of the property received by the consolidated governments from the former government which occupied such urban services district, and the boards, bodies and officers of each such urban services district shall be entitled to deal with, encumber, and transfer such property on behalf of the consolidated government. The second, third, fourth and fifth urban services districts shall each be entitled to own, acquire, encumber and transfer property in its own name, by the duly authorized action of its boards, bodies and officers."
In addition to the above provisions, the amendatory act further provided in subsequent sections thereof that the urban service districts of the Beaches and Baldwin should be exempt from all general provisions *89 of the charter contained in Chapter 67-1320 relating to auditing, budgeting, issuance and retirement of bonds, pensions, employees, civil service, accounting, land use and planning, and imposition of taxes, all of which functions are reserved as separate independent municipal functions to be exclusively performed by the governing bodies of the several urban service districts comprising the former municipalities of the Beaches and Baldwin.
In determining what effect the amendatory act, Chapter 67-1535, had upon the original charter act adopted at the same session of the Legislature, Chapter 67-1320, we are controlled by that established principle of law which provides that the last expression of the legislative will is the law in cases of conflicting provisions in the same statute or in different statutes. The last in point of time or order of arrangement prevails.[1]
An objective consideration of the various provisions of the amendatory act leads us to the inescapable conclusion that its intent was to afford the former municipalities of the Beaches and Baldwin a substantial degree of autonomy as corporate municipal entities with the power and authority to operate as municipal corporations in identically the same fashion as they had as chartered municipalities prior to consolidation. Their freedom to function as independent corporate entities is restricted only by the right of the consolidated government of the City of Jacksonville to adopt ordinances in the exercise of its county governmental functions binding on the territory and inhabitants of those urban service districts comprising the Beaches and Baldwin only to the extent as would have been permitted by Duval County prior to consolidation.
By the judgment appealed herein the trial court found that it was the legislative intent in the adoption of the composite charter act of the City of Jacksonville for this newly created municipality to inherit all of the powers that the Beaches and Baldwin had, relegating them to the status of subordinate service districts which were permitted no greater authority than to retain their names and the outward trappings of power consisting of boards, bodies, and officers. With this conclusion we are unable to agree as it does violence to the clear and unambiguous provisions of the amendatory act which provide that the urban service districts consisting of the Beaches and Baldwin shall have such powers and duties as were possessed by the former government which occupied the area of each urban service district immediately prior to the effective date of consolidation, together with such other additional powers and duties as may be granted or imposed upon municipalities under the constitution and general laws of Florida. The amendatory act further provides that each of the urban service districts shall retain the same boards, bodies, and officers as the former government which occupied the area of each district immediately prior to consolidation, which boards, bodies, and officers shall continue to have the same powers and duties which they had under the respective municipal charters of the former governments.
The record reveals that since the date of consolidation on October 1, 1968, the urban service districts comprising the Beaches and Baldwin have continued to operate in exactly the same manner as they did as municipal corporations prior to consolidation. The several districts have continued to use and be known by their former corporate names, have continued to be served by their duly elected mayors, town councils, police and fire departments and courts, and to furnish other municipal services previously furnished to and enjoyed by the citizens residing within their territorial limits. Each of the urban service districts has continued to levy and collect *90 taxes on property lying within their districts and to use such tax revenues in the operation of their local governments under the same authority and in the same manner as was done prior to consolidation.
Although the identity of appellants as de jure municipal corporations was effectively abolished by the charter act creating the consolidated government of the City of Jacksonville, their status as municipal corporations, as that term is generally used and understood, was abolished in name only. As a matter of semantics and strict legal construction appellants no longer exist as legally constituted municipal corporations, nevertheless it cannot be doubted but that they do continue to exist as quasi municipal corporations.[2] The continued existence of the Beaches and Baldwin as quasi municipal corporations was recognized by the Supreme Court in the case of Jackson v. Consolidated Government of the City of Jacksonville[3] when, in upholding the constitutional validity of the charter act of appellee-City of Jacksonville, the court said:
"`The provision of the Jacksonville Consolidation Amendment quoted above clearly contemplates that the consolidated city government will extend throughout the territory, but that one or more municipal or local governments in the territory may continue in existence. Continuation of quasi municipal corporations appears to be well within the amendment.'"
As quasi municipal corporations appellants herein are not restricted in their power and authority to perform only a limited number of municipal functions such as operating a water, sewerage, or mosquito control district, but are empowered to exercise all municipal functions, powers, duties, and authority normally possessed and exercised by other duly chartered municipal corporations in this state.
Appellee-City of Jacksonville contends that it possesses the exclusive right to levy and collect occupational license taxes within its territorial limits, including the territory comprising the urban service districts of the Beaches and Baldwin, and that it has the exclusive right to receive and expend tax revenues allocable under general law to the municipalities in this state. By the judgment appealed herein the trial court agreed with appellee, but we are unable to concur in this conclusion.
That portion of the charter of appellee-City of Jacksonville embodied in the amendatory act designated as Chapter 67-1535 clearly grants to appellants the same powers, privileges, and immunities which they exercised and enjoyed under their respective muncipal charters immediately prior to consolidation. For many years prior to consolidation appellants have levied and collected occupational license taxes on businesses and professions operating within their corporate limits pursuant to the authority of their municipal charters and the general laws of the state.
The amendatory provisions of the charter act vested in appellants such additional powers and duties as may hereafter be imposed upon municipalities under the constitution or general laws of the State of Florida. In 1968 the constitution of our state was amended to provide that no tax should be levied except in pursuance of law[4] and granting to the Legislature authority to authorize municipalities to levy ad valorem and other taxes for their respective purposes except ad valorem taxes on intangible personal property and other taxes prohibited by the constitution.[5] In pursuance of the foregoing constitutional authority, the Legislature of Florida in *91 1972 adopted Chapter 72-306, Laws of Florida, 1972, authorizing the governing bodies of incorporated municipalities to levy by appropriate resolution an occupational license tax for the privilege of engaging in or managing any business, profesion, or occupation within its jurisdiction.
In pursuance of the power and authority granted appellants in their initial charters as municipal corporations, which was vested in them as urban service districts under the charter act of the City of Jacksonville and by the provisions of the constitutional amendment of 1968, implemented by the general act of the Legislature in 1972, they adopted ordinances imposing occupational license taxes on businesses, professions, and occupations within their respective territorial limits. This we hold they were fully authorized and empowered to do, and that the trial court erred in holding to the contrary.
As heretofore stated, even though appellants no longer occupy the status of de jure municipal corporations, they do constitute quasi corporations empowered with authority to perform all municipal functions which they were permitted to perform under their original municipal charters and the general laws of the state immediately prior to consolidation. They are therefore corporate entities having the same rights as duly constituted municipal corporations to share in, receive, and expend revenues allocable to municipal corporations by both our federal and state governments. The purpose of such allocated revenues is to enable local governmental units to engage in the performance of municipal functions and furnish municipal services for the benefit of the people and property within their territorial jurisdictions. Such revenues are shared with local governmental units as a means of relieving their taxpayers from bearing the entire cost of those services so essential to the health, safety, and welfare of the people therein. We perceive of no reason why such revenues should be available to a municipal corporation operating under a charter granted it by the Legislature but be denied a quasi municipal corporation performing identical municipal functions merely because it is legally categorized as an urban service district rather than a chartered municipal corporation.
We are fully cognizant of the fact that our construction of the charter act of the City of Jacksonville as hereinabove set forth is to some extent at variance with the single government concept envisioned by the provisions of Chapter 67-1320 which first passed the Legislature. We cannot escape the conviction, however, that the single government concept was modified in important respects by the drafting, introduction, and passage of the amendatory act, Chapter 67-1535, relating exclusively to the former municipalities of the Beaches and Baldwin.
Any lingering doubt as to the intent of the Legislature to permit the Beaches and Baldwin to remain as corporate municipal entities after consolidation is dispelled by its subsequent actions. Following the adoption of the charter act creating the consolidated City of Jacksonville, the 1967 session of the Legislature enacted Chapter 67-1086 amending the charter of the City of Atlantic Beach by providing for the appointment of a city tax assessor by the city commission and prescribing his term of office, duties, and responsibilities. The 1969 session of the Legislature enacted Chapter 69-1333 by amending the charter of the City of Neptune Beach by conferring additional powers on the city council of that municipality. The 1970 session of the Legislature enacted Chapter 70-578 amending the charter of the City of Atlantic Beach by increasing the interest rate which the City is authorized to pay on general obligation bonds, revenue bonds, and certificates. The same session of the Legislature enacted Chapter 70-760 amending the charter of the City of Jacksonville Beach by authorizing the City to lease all or any part of certain described oceanfront property for public or nonpublic use. In addition, *92 the Legislature of 1972 neacted Chapter 72-570 amending the charter of the City of Jacksonville Beach relating to the meetings of its city council and the holding of its municipal elections.
To hold that the amendatory act served no greater purpose or effect than that attributed to it by the trial court would be to declare it to be nothing more than a cruel hoax perpetrated upon the people of those former municipalities by the members of a calloused legislative delegation completely insensible to their obligations as representatives of their constituents. This we are unwilling to do. The personal acquaintanceship which the members of this court had with the legislative delegation then representing the people of Duval County, coupled with the documented history of the movement to create a consolidated form of government in Duval County, leaves no doubt in our minds that such a hoax was never intended, but, on the contrary, the amendatory act was conceived and so drafted as to be responsive to the needs and wishes of the people residing in the Beaches and Baldwin and to grant them some degree of political independence and self-determination. As so cogently stated by Justice Frankfurter in United States v. Shirey:[6]
"Statutes ... are not inert exercises in literary composition. They are instruments of government, and in construing them `the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down.' United States v. Whitridge, 197 U.S. 135, 143, 25 S.Ct. 406, 408, 49 L.Ed. 696, 698. This is so because the purpose of an enactment is embedded in its words even though it is not always pedantically expressed in words. See United States v. Wurzbach, 280 U.S. 396, 399, 50 S.Ct. 167, 158, 74 L.Ed. 508, 510. Statutory meaning, it is to be remembered, is more to be felt than demonstrated, see United States v. Johnson, 221 U.S. 488, 496, 31 S.Ct. 627, 55 L.Ed. 823, 826, or, as Judge Learned Hand has put it, the art of interpretation is `the art of proliferating a purpose.' Brooklyn Nat. Corp. v. Commissioner, 2 Cir., 157 F.2d 450, 451... ."
For the foregoing reasons, the judgment appealed herein is reversed and the cause remanded for further proceedings consistent with the views and holdings set forth herein.
RAWLS, C.J., and CARROLL, CHARLES A., Associate Judge, concur.
NOTES
[1] De Coningh v. City of Daytona Beach (Fla.App. 1958) 103 So.2d 233; Johnson v. State (1946), 157 Fla. 685, 27 So.2d 276, 282.
[2] 1 McQuillin, Municipal Corporations, § 2.13 (1971 Rev. Edition); 56 Am.Jur.2d, Municipal Corporations, § 13.
[3] Jackson v. Consolidated Government of City of Jacksonville, (Fla. 1969) 225 So.2d 497, 503.
[4] Florida Constitution. Art. VII, § 1 F.S.A. (1968).
[5] Florida Constitution, Art. VII, § 9 F.S.A. (1968).
[6] United States v. Shirey, 359 U.S. 255, 79 S.Ct. 746, 749, 3 L.Ed.2d 789, 793, 794 (1959).